## Railing *versus* The Commonwealth.

1. Dying declarations are only admissible when the circumstances of the death are the subject of the declaration and the death the subject of the charge; they are not admissible in a trial for abortion, even although death has ensued.

2. The death of the person upon whom the crime of abortion has been committed is not, under our statute, a constituent element, in itself, of the offence, but simply determines the character of the penalty.

3. The nature of dying declarations and the reason for admitting the same in evidence, discussed and commented upon.

4. Where it had been endeavored to show that the crime of abortion was committed by the injection of two black powders, it was not error for the court to state, in answer to a point asking that the verdict should be for acquittal, if such fact were not satisfactorily proved, that "it would be a criminal abortion if the miscarriage was procured by the use of an instrument with intent to procure such miscarriage."

May 6th, 1885. Before MERCUR, C. J., PAXSON, STERRETT, GREEN and CLARK, JJ. GORDON and TRUNKEY, JJ., absent.

ERROR to the Court of Quarter Sessions of *Cumberland county:* Of January Term 1885, No. 297.

Indictment of Charles A. Railing for unlawfully administering a drug to Annie Foust, a pregnant woman, with intent to procure a miscarriage, in consequence whereof the said Annie Foust died. Plea, not guilty *et de hoc.*

On the trial, before HERMAN, P. J., the following facts appeared: On January 22d, 1884, about 4 P. M., defendant took Annie Foust, at that time pregnant with child, from her father's house in a sleigh. They were next seen at supper at a hotel at Carlisle, nine miles distant, and the hotel register showed the name, "Charles Hock and Lady, Leesburg," in the handwriting of the defendant. An hostler helped to harness the horse at nine o'clock that evening, and at eleven o'clock, Mrs. David R. Halter, sister of Annie Foust, testified that she heard a horse and sleigh drive up in the yard; that she opened the door and admitted Annie Foust, the defendant being with her, but going directly away. That said Annie Foust complained of being ill, and on the night of January 25th had a miscarriage, and died on the 26th. The Commonwealth offered to prove by David R. Halter, the dying declarations of Annie Foust pertaining to the crime and that she was aware of her condition. Objected to on the ground that dying declarations are not admissible in abortion. Ob-

jection overruled. Evidence admitted. Exception (First assignment of error). Halter then testified that the deceased had told him on the morning of January 25th, that she would "never get over this" and in answer to his inquiry as to how it occurred, she told him that defendant had an abortion performed upon her at Carlisle by a doctor, who injected into her two black powders, but whom she could not describe, and whose name she did not know, and that the defendant had paid the doctor $50 for the operation. The testimony of a number of physicians was produced to show that the drive of fourteen miles on a cold wintry night might have been sufficient cause for the miscarriage, and that there were no black powders, known to medical science, which could be injected as described and leave no post-mortem indications as in this case.

The defendant requested the court to charge, inter alia, as follows:

2d. If the jury are not satisfied beyond a reasonable doubt that a criminal abortion was performed by the injection of two black powders into the body of Annie Foust, then the verdict should acquit the defendant.

Answer. To answer this point as requested would be to instruct you, in effect, that no criminal abortion was committed, unless in fact two black powders were injected into the body of Annie Foust, and I cannot so instruct you. If a mere pretence or attempt was made to inject a black powder, and no substance was in fact injected into the person at all, it would nevertheless be a criminal abortion if the miscarriage was procured by the use of an instrument with intent to procure such miscarriage. (Second assignment of error).

4th. If the jury believe from the evidence in the case that the alleged dying declarations given by the witness Halter was not made under the immediate apprehension of impending death, or that it was not made at all, or that it is not true, then there is no proof of the *corpus delicti* in the evidence outside of the admissions of the defendant, and these are not evidence unless the *corpus delicti* is first established, and the verdict should acquit the defendant.

Answer. I cannot answer this point as requested. Independently of the dying declarations of Annie Foust, the Commonwealth has given sufficient evidence of the *corpus delicti* to entitle the case to go to the jury; and, therefore, without such dying declarations it was competent to put in evidence the admissions made by the defendant connecting him with the crime charged. (Third assignment of error).

5th. If the jury believe from all the evidence in the case that the alleged dying declaration, given by the witness Halter, was not made under the immediate apprehension and be-

[Railing *v.* Commonwealth.]

lief of impending death, then it is not admissible, and without it there is no proof of the *corpus delicti*, except in the admissions of the defendant, and these are not evidence until the *corpus delicti* is proved, and the verdict should acquit the defendant.

Answer. I cannot answer this point as requested, for the reasons just stated in answer to defendant's fourth point. (Fourth assignment of error).

7th. If the jury believe that there were natural causes which account for the death of Annie Foust, and that it is doubtful whether the means mentioned in her alleged dying declarations could have produced an abortion, which would not have left traces discoverable by the post mortem examination, they should acquit the defendant.

Answer. If the death of Annie Foust resulted from natural causes, and not in consequence of any of the unlawful acts charged to have been done to her to procure her miscarriage, then the defendant should be acquitted. But I cannot say that the jury should acquit the defendant by reason of the mere fact that in the post mortem appearances no traces of the precise cause of the miscarriage were discoverable. (Fifth assignment of error).

The court charged, inter alia, as follows : "If it has been shown by evidence that death resulted from . . . . . causes other than alleged by the Commonwealth, . . . . . it is your duty to acquit the defendant. . . . . . If the evidence satisfies you . . . . . that the criminal abortion was actually procured, the mere fact that it may have been caused by some other means will not justify an acquittal. . . . . . A mere fanciful supposition should not work the defendant's acquittal. . . . . . The evidence must be inconsistent with the reasonable supposition of his innocence. (Eighth assignment of error).

Verdict of guilty, and sentence accordingly. The defendant took this writ assigning for error, in addition to the points above noted, the action of the court in citing all the evidence favorable to the Commonwealth and omitting to refer to the testimony favorable to the defendant (sixth assignment of error), in depreciating the testimony for defendant by referring to it as "fanciful" (seventh assignment of error) and in saying in its charge that the *corpus delicti* was clearly proven outside of the dying declarations. (Ninth assignment of error).

*F. E. Beltzhoover* and *S. Hepburn, Jr.,* for plaintiff in error. —Dying declarations are only admissible where the death of the declarant is the subject of the charge: Rex *v.* Hutchinson, 2 B. & C., 608, note ; Reg. *v.* Hind, 8 Cox, C. C., 300 ; Peo-

ple v. Davis, 56 N. Y., 95; State v. Harper, 35 Ohio St., 78; Wooten v. Wilkins, 39 Georgia, 223.

John T. Stuart, District Attorney, (H. S. Stuart with him), for defendant in error.—The deceased was in a dying condition and her declarations were properly admitted in evidence; the death of the declarant was the essential ingredient of the offence here charged, and hence her dying declarations were admissible: Commonwealth v. Gumpert, 6 Luz. Leg. Reg., 187; Commonwealth v. Bruce, 5 Crim. Law Mag., 680; Montgomery v. State, 3 Crim. Law Mag., 523; State v. Dickinson, 41 Wis., 299.

Mr. Justice GREEN delivered the opinion of the Court, October 5th, 1885.

The principal question in this case is that which relates to the admissibility of the dying declarations of Annie Foust. The defendant was charged with administering to her a drug with intent to procure a miscarriage, and it was also charged that her death resulted as a consequence. There were four counts in the indictment and all of them charged the death of the woman as the result of the defendant's unlawful act. It is entirely unquestioned that dying declarations are admissible only in homicide cases, as a rule, and that the death of the deceased must be the subject of the charge and the circumstances of the death the subject of the declaration: 1 Greenl. Ev. § 156, 13th ed. Whart. Cr. Ev. § 276; Whart. Am. Cr. Law § 669 et seq. It is equally unquestioned that there is no grade of homicide involved in this case, the offence charged being the one commonly known as abortion. It is argued, however, with much force, that the death of the woman, when it occurs, is a necessary ingredient of the offence, under our statute, and therefore brings the case within the rule above stated. It is claimed that the death is in part at least the subject of the charge. In one sense this is true. But the question is, is it so in the real sense of the rule which controls the subject? That inquiry involves the necessity of an examination of our criminal statute against abortion. It consists of two sections, the 87th and 88th of the criminal code of 1860. The 87th provides that if any person shall unlawfully administer any drug or substance to a pregnant woman, or use any instrument with intent to procure her miscarriage, and she or the child shall die in consequence of such act, such person shall be guilty of felony, and shall be sentenced to pay a fine not exceeding $500, and to undergo imprisonment at labor not exceeding seven years. The 88th section provides that if any person with intent to procure the miscarriage of any woman

shall unlawfully administer to her any drug or substance or use any instrument or other means with like intent, he shall be guilty of felony and be sentenced to pay a fine not exceeding $500, and undergo an imprisonment at labor not exceeding three years. In the last case the offence is complete without the death of the woman or child. In both cases the grade of the offence is the same—felony. In both, the acts done by the prisoner are the same. In the first, if those acts are followed by the death of the mother or child as a consequence, that is, in the relation of effect to a cause, a difference results in one of the penalties imposed. The possible fine is the same, but the possible imprisonment is longer, seven years instead of three. The facts which constitute the crime are precisely the same in both cases, to wit, the administering the drug, or using the instrument with intent to procure a miscarriage. It follows that the death is no part of the facts which go to make up or constitute the crime. It is complete with the death or without it. The death therefore considered in and of itself is not a constituent element of the offence. It may happen or it may not. If it does not happen a certain possibility of penalty follows. If it does happen the same character of penalty results but with a larger possibility, not a certainty, in one of the items. This seems to be a precise expression of the difference between the cases provided for in the two sections. This being so the question recurs, is the difference between the two of such a character as to change the application of the rule of law relating to the admissibility of dying declarations. Of course they are not admissible if death does not result as a consequence from the unlawful acts. Therefore if the woman should subsequently die from some entirely different and independent cause, her dying declarations in relation to a prior miscarriage would be clearly incompetent. In case she does die in consequence of the unlawful acts, the crime charged and tried is not homicide in any of its forms, but the felony of administering a drug, or using an instrument, with intent to produce a miscarriage. In its facts and in its essence it is the same crime that is charged and tried if no death results. The death, when it occurs, is an incident the sole purpose of which is to determine whether the imprisonment of the defendant may be longer than when death does not occur. The facts which constitute the crime may not be proved by any declarations of the woman, when death does not follow, or when it follows from some other cause. Why then should the very same facts be proved by such declaration, when death does result? Not because it is a homicide case and the rule as to dying declarations admits them in such cases, because it is not a case of

[Railing v. Commonwealth.]

homicide in any point of view. Not because the death is the subject of the charge, for the charge is the attempted or accomplished miscarriage by means of a drug or instrument. That crime is as fully completed without the death as with it. The death therefore is not an essential ingredient of it. Its function under the statute, when it occurs as a consequence is, not to determine the *factum*, or the character, or the grade of the crime, but the character of the penalty to be endured by the criminal. Of course if the statute had declared that when death resulted the offence should be manslaughter or any other grade of homicide, the case would be entirely different. Then the death would be an essential ingredient of the offence, and would be the subject of the charge, and the rule as to dying declarations would apply. But such is not this case and we do not think it wise to enlarge the operation of the rule so as to embrace cases other than homicide strictly. The objections to the admission of such testimony are of the gravest character. It is hearsay, it is not under the sanction of an oath, and there is no opportunity for cross-examination. It is also subject to the special objection that it generally comes from persons in the last stages of physical exhaustion, with mental powers necessarily impaired to a greater or less extent, and at the best represents the declarant's perceptions, conclusions, inferences and opinions, which may be, and often are, based upon imperfect and inadequate grounds. Nor is the reason ordinarily given for their admission at all satisfactory. It is that the declarant in the immediate presence of death is so conscious of the great responsibility awaiting him in the near future if he utters falsehood, that he will in all human probability utter only the truth. The fallacy of this reasoning has been many times demonstrated. It leaves entirely out of account the influence of the passions of hatred and revenge which almost all human beings naturally feel against their murderers, and it ignores the well known fact that persons guilty of murder, beyond all question, very frequently deny their guilt up to the last moment upon the scaffold.

But in point of fact the reason we are considering can not be regarded as the real or the controlling reason for the rule, because, in terms, it would be just as applicable to declarations made by dying persons in regard to civil affairs or to all minor criminal matters, as to the facts attending a homicide. In truth there would be less temptation to falsify in regard to such matters than in regard to acts of violence perpetrated upon the person of the declarant. Yet it is undisputed that in all civil cases and in all crimes other than homicide, such declarations are entirely incompetent. A far better reason in support of the rule, as it seems to us, is, that dying declara-

tions are admitted from the necessity of the case and in order that murderers may not go unpunished. Such a reason only can justify their admission in cases involving the life of the accused. While ordinarily the precautions against illegitimate testimony increase with the danger menacing the accused, in this one exceptional case of homicide they are relaxed, and the rule which excludes mere declarations in all other cases is reversed. In Whart. Crim. Ev., § 278, the rule is thus stated: "Dying declarations are admitted from the necessity of the case, to identify the prisoner and the deceased, to establish the circumstances of the *res gestæ*, and to show the transactions from which the death results." In Greenl. on Evid., Vol. 1. (13th ed.,) § 156, the writer says: "These or the like considerations, have been regarded as counterbalancing the force of the general principle above stated; leaving this exception to stand only upon the ground of the public necessity of preserving the lives of the community by bringing manslayers to justice. For it often happens that there is no third person present to be an eye-witness to the fact; and the usual witness in other cases of felony, namely, the party injured, is himself destroyed." In the foot-note 2 to the above section the opinion of Judge REDFIELD is quoted in the following words: "But it was from a misapprehension of the true grounds upon which the declarations are receivable as testimony. It is not received upon any other ground than that of necessity, in order to prevent murder going unpunished. What is said in the books about the situation of the declarant, he being virtually under the most solemn sanction to speak the truth, is far from presenting the true ground of admission."

Believing this to be the true ground upon which to place the admissibility of dying declarations, it will be seen at once that they are incompetent except in cases of actual homicide, where the killing is the very substance and subject of the criminal accusation on trial. This we hold to be the true sense in which to interpret the rule that such declarations are only admissible where the death is the subject of the charge.

All the text books and a host of judicial decisions assert that the rule of admissibility is confined to cases of homicide. Thus this court in Brown *v.* Commonwealth, 23 P. F. S., on p. 327, state the rule, quoting from Whart. Am. Cr. Law, § 669 in these words: "The dying declarations of a person who expects to die, respecting the circumstances under which he received a mortal wound are constantly admitted in criminal prosecutions where the death is the subject of criminal inquiry, though the prosecution be for manslaughter; though the accused was not present when they were made and had no

opportunity for cross-examination, and against or in favor of the party charged with the death."

There is a vast number of cases in which where the prisoner is tried for a crime other than homicide the dying declarations of the person upon whom the crime was perpetrated are inadmissible, though they relate to the circumstances of the crime. Thus in Rex v. Lloyd et al., 4 Carr. & P., 233, it was held that on an indictment for robbery the declaration *in articulo mortis* of the party robbed is not admissible in evidence. BOLLAND, B., said, "I think that declarations *in articulo mortis* are not admissible in evidence to make out a charge of robbery; nor indeed any other charge except those in which the death of the deceased person, by whom the declaration was made, is the subject of the inquiry." A citation of this class of cases is not necessary, as they are quite familiar and are not at all disputed. It only remains to consider the course of authority upon the very question now before us. It has never heretofore been before this court. But in England and several of the states it has been considered and determined, and the weight of authority seems to be quite decidedly against the admissibility of the evidence. Thus in Rex v. Hutchinson, 2 B. & C., 608, note a., the prisoner was indicted for administering savin to a woman pregnant but not quick with child, with intent to procure abortion. The woman was dead, and for the prosecution, evidence of her dying declaration upon the subject was tendered. The court rejected the evidence, observing that although the declaration might relate to the cause of the death, still such declarations were admissible in those cases alone where the death of the party was the subject of the inquiry. In Reg. v. Hind, 8 Cox, C. C., 300, the defendant was indicted for using instruments upon a woman with intent to produce an abortion, in consequence of which she died. It was held that her dying declarations in relation to the offence were inadmissible. The same course was followed in the state of New York in the case of the People v. Davis, 56 N. Y., 95, where the statute is quite similar to our own, the penalty being increased when the woman dies in consequence of the unlawful acts. It was held that the dying declarations of the woman were incompetent on the general ground that the death was not the subject of the charge. In the case of the State v. Harper, 35 Ohio St. Rep., 78, the same doctrine was held under a statute almost identical with ours. The Chief Justice said, "This was an indictment for unlawfully using an instrument with the intent of producing an abortion, and not an indictment for homicide:" State v. Barker, 28 Ohio St., 583; People v. Davis, 56 N. Y., 96. The death was not the subject of the charge, and was alleged only as a

[Railing *v.* Commonwealth.]

consequence of the illegal act charged, which latter was the only subject of investigation. Did the court err in rejecting the dying declaration in proof of the charge? We think not. The general rule is that dying declarations are admissible only when the death of the declarant is the subject of the charge, and the circumstances of the death are the subject of the dying declaration: Rex *v.* Mead, 2 B. & C., 605; 1 Green, Ev., 156; Rex *v.* Lloyd, 4 C. & P., 233."

On the other hand the Supreme Court of Indiana has held that such declarations were admissible in an indictment under a similar statute: Montgomery *v.* State, reported in 3 Crim. Law Mag., 523. In State *v.* Dickinson, 41 Wis., 299, the declarations were admitted, but by the statute of that state the offence is expressly made manslaughter where the woman dies, and the case was therefore one of homicide and within the rule. The case in Indiana appears to be the only one in a court of last resort in which the declarations have been held admissible. After a careful examination of the opinion in that case, and also of two other cases decided by Courts of Quarter Sessions in our own state, we feel constrained to say that we think the better, and the safer rule is, to limit the admissibility of dying declarations to cases of homicide only. We are therefore of opinion that the learned court below was in error in receiving the declarations of Annie Foust in this case, and for that reason the judgment must be reversed. The second assignment is not sustained. The third, fourth and fifth become immaterial in consequence of our decision rejecting the declarations. The sixth and seventh assignments are to some extent justified by the language of the charge, but we do not feel disposed to reverse on them. The eighth assignment is not sustained, and the ninth does not set out any specific words of the charge, and does not appear to be justified by its general substance.

> The judgment is reversed, and the record is remanded to the court below for further proceedings, together with this opinion setting forth the causes of reversal.