Opinion by
Orlady, J.,
This defendant was jointly indicted with Dr. T. C. Fegley, under secs. 87 and 88 of our Crimes Act of March 31, 1860, P. L. 382; the verdict being, as to this *339 defendant “Guilty on Count No. 1, namely, attempt to procure abortion; not guilty of second count, namely, abortion followed by death, and as to Dr. T. C. Fegley, not guilty on both counts.”
The case was ably tried by zealous counsel, and after a careful review of the record, we sustain the fifth and sixth assignments of error; the others are not sustained. The defendant, who was an interne at the Pottsville Hospital, admitted that in October, 1910, he had sexual intercourse with Emily Albright, who was a student nurse in the same institution. The next month the girl left the hospital, and returned in the February following. During her absence she became convinced that she was pregnant and notified Dr. Bingaman of that fact, by letter, as well as to several other persons, accompanied' with the statement “That she was not at all afraid she would not get rid of it, because she had used a catheter.” On March 1, she resumed her duties at the hospital, and the next day had a severe fall in a corridor which resulted in sufficient injury to produce a hemorrhage from the vagina. After a visit to her mother she communicated with Dr. Bingaman, and went with him to Shamokin, in Northumberland county, and there remained with him, overnight, after registering as man and wife, at the Graemer Hotel.
The important question in the case is fairly raised by the appellee, under the fourth caption in the argument: “Can a defendant who uses instruments on a woman, with intent to procure an abortion, in one county, be convicted in another county where delivery takes place as a result of such act? ” and he frankly reviews the proof as follows: “While the evidence in this case does not specifically show where the condition was produced which Miss Albright is alleged to have been in when she and Dr. Bingaman came to the office of Dr. Fegley on the night of March 6, it does show that she and Dr. Bingaman were together until they arrived at the office of Dr. Fegley at eight o’clock on the night of the operation. *340 It does show that Dr. Bingaman and Miss Albright were together all night at the Graemer Hotel in Shamokin.”
It must be conceded, as urged by the appellant, “That the only place where the commonwealth contended that Dr. Bingaman had used any instruments upon Emily Albright was at Shamokin, in Northumberland county.”
This was the view accepted by the learned trial judge who stated in his general charge (fifth assignment): “It is contended here by the commonwealth, and their theory is, that this abortion was started by Dr. Bingaman the night that he spent with Emily Albright in Shamokin. . . . Now I will say to you, it has been argued to you concerning the question of jurisdiction. You do not need to bother with that, because we have jurisdiction in this case. The defendants have not pleaded to the jurisdiction of the court, nor have they at any time raised the question to the court, and that is a question of law for us to dispose of and not for the jury; at any rate, it is not disputed that a baby was taken from this woman at Tremont, which is in this county, so that, it does not make any difference, whether the ‘abortion was started in Shamokin, or whether it was started in Tremont, for the purposes of the jurisdiction of this court. We have jurisdiction in this case, I say to you, as a matter of law.” By this it is manifest, that the learned trial judge considered the question of jurisdiction fairly raised before the court, and decided it against the contention of the defendant. It could not be doubted that the court had jurisdiction of offenses committed in Tremont which is in Schuylkill county, and it is just as clear that it did not have jurisdiction of an offense which was completed in Shamokin, in Northumberland county. Inasmuch as the verdict as to this defendant was guilty of attempt to procure abortion it became a controlling question of fact for the jury to decide, whether the offense charged in the first count in the indictment, was an entire perfected offense in Shamokin, without any independent overt act in Schuylkill county.
*341 The theory of the commonwealth, which was adopted by the trial judge was, that anything done by Dr. Bingaman at Shamokin, in pursuance of an attempt to commit an abortion there, he having brought his victim into Schuylkill county, and there the crime was consummated by the delivery of the child, he might be convicted in Schuylkill county because the attempt was a continuing offense.
This was not an indictment for a common-law offense, but was framed, and the case was tried for the crimes charged in secs. 87 and 88 of the Crimes Act.
The distinction between these sections is clearly defined in Railing v. Com., 110 Pa. 100, and the view taken by the trial judge was clearly prejudicial to this defendant. This is the more apparent by the point submitted by the defendant and the answer thereto (sixth assignment): “If the jury believe that delivery of Emily Albright was inevitable because of the condition observed by the physicians at the office of Dr. Fegley, to wit, the profuse hemorrhage: that the mouth of the womb was dilated; the statements made in their presence by said Emily Albright as to her previous use of a catheter; that she had done all she could to bring on an abortion, and that she felt it was coming; that after the first packing the hemorrhage continued and was still profuse, it was proper for the defendants, acting as physicians, to empty the uterus in the manner their experience dictated to be proper under the circumstances.” Answer, “We affirm the point, if the jury find that the defendants were not responsible for her condition;” to this should have been added, “and if the jury find that the offense was completed in Northumberland county the defendant could not be convicted of that offense in Schuylkill county.” The sections quoted do not provide for an attempt to procure an abortion, as a substantive offense, in one county, being a continuing offense in another county where the actual abortion is consummated by the physical delivery of the foetus, There is no statutory provision *342 for such a condition and until the legislature so declares the offense must be triable in the court of quarter sessions of the county, in due form of law, where the act is consummated.
The jury was fully warranted in believing, under the instruction of the court, that under the circumstances of the case, Dr. Bingaman could.be convicted in Schuylkill county, for an unsuccessful attempt made in Northumberland county; even if they believed that what was done by Drs. Bingaman and Fegley in Schuylkill county was perfectly innocent and justifiable.
In acquitting Dr. Fegley the jury could only have concluded, that all that was done under his direction in his office was honestly done by him in a desperate attempt to save the life of Miss Albright, and that there was no overt criminal act done by either at that time. Independent of what occurred in Dr. Fegley’s office there was no evidence of any attempt in Schuylkill county.
The commonwealth contended at the trial and on argument here, that the criminal acts were not done by Miss Albright, but were committed by Dr. Bingaman in Shamokin.
Under the charge of the court, taken in connection with the defendant’s point and answer thereto the jury might easily decide that the sequential effect of the Shamokin attempt, which developed in Tremont, constituted a substantive offense at the latter place and accordingly they found the defendant guilty of an attempt to procure an abortion. The answer should have been clear, unequivocal and responsive; as it was, there was a misapprehension as to the jurisdiction of the court, and it withdrew the attention of the jury from a very material fact. For the reasons above given the judgment is reversed and a new trial awarded.