LEON A. CLARK V. STATE OF NEBRASKA.

FILED NOVEMBER 19, 1926.   No. 25118.

Criminal Law: DYING DECLARATIONS. Dying declarations are admissible only in cases of homicide, and then only where the death of declarant is the subject of the charge.

ERROR to the district court for Red Willow county: CHARLES E. ELDRED, JUDGE. *Reversed.*

*Stewart, Perry, Stewart & Van Pelt* and *Kiplinger &
Hanson,* for plaintiff in error.

*O. S. Spillman, Attorney General, B. F. Butler* and *Frank
M. Colfer, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, THOMP-
SON and EBERLY, JJ.

MORRISSEY, C. J.

Defendant was convicted in the district court for Red
Willow county upon an information which charged him with
having committed the crime of sodomy, on May 1, 1924,
upon the person of a young man named Ted Pate.

At the time the offense is alleged to have been committed,
defendant was engaged in the mercantile business in the
city of McCook.   His home was in an apartment house,
and this apartment was frequented by several boys and
young men of the city.

It is shown by witnesses for the state that defendant
and Ted Pate had long been intimate friends; that Pate
was an employee of defendant and frequently slept in de-
fendant's apartment.   In the early summer of 1924, de-
fendant, Pate, and another young man made an extended
automobile trip together.   For some time prior Pate had
been in failing health.   While making the excursion his
condition became such that they turned back, and, upon
reaching McCook, Pate submitted himself to the care of a
physician.   The physician found his patient suffering from
syphilis in an advanced and virulent form.   From this dis-
ease Pate soon thereafter died.

The mother of Pate was called as a witness for the state
and, over objection by defendant, was permitted to testify
that, shortly before the death of her son, he told her that
his syphiletic condition was due to unnatural intercourse
which defendant had had with him.

Upon the facts thus briefly summarized, the case was
submitted to a jury, which returned a verdict of guilty and

defendant was sentenced to serve a term in the state penitentiary.

The first assignment of error deals with the admission of the testimony of Pate's mother in which she told of the statement made to her by her son shortly before he died. It is claimed that this testimony does not fall within the exceptions to the hearsay rule and was, therefore, not admissible.

At the early common law, dying declarations were admissible in all cases, civil or criminal. Later a distinction was evolved and such declarations were received only in homicide cases. This has been the general rule in this country for more than a hundred years. It has been so long recognized as a rule of evidence that a court may well pause before overthrowing it. There is an extensive discussion and a masterful criticism of this rule in 3 Wigmore, Evidence (2d ed.) sec. 1436. The learned author indicts it as a heresy, but concludes the discussion by saying that it should be wholly abolished by legislation. The rule has been so generally accepted and its overthrow might lead to such confusion that we are constrained to adhere to it, and leave the law-making body to determine whether or not it shall be revoked.

Dying declarations are admissible only in cases of homicide, and then only where the death of declarant is the subject of the charge. 1 Greenleaf, Evidence (16th ed.) sec. 156a; *People v. Stison,* 140 Mich. 216; 22 C. J. 258, sec. 259.

It was error for the court to permit the testimony to be submitted to the jury. The judgment of the trial court is set aside and the cause remanded.

REVERSED.

ROSE, J., dissenting.

I dissent from the ruling that dying declarations are inadmissible in evidence except in prosecutions for felonious homicides. Evidence of this character consists of statements by a person conscious of certain and immediate death. The common law once sanctioned proof of dying declara-

Clark v. State.

tions in both civil and criminal cases.  The solemnity of approaching dissolution and the natural inclination to refrain from false accusations in the presence of impending death performed the office of an oath for the purpose of ascertaining the truth from a person having knowledge of material facts.  In time, criticism based on the inadmissibility of hearsay evidence, on the lack of opportunity for cross-examination, and on other technical objections to the general applicability of the common-law rule resulted in restricting dying declarations to prosecutions for homicide in many jurisdictions.  Some courts, however, admitted dying declarations in other criminal cases.  An able textwriter and teacher condemned the restrictions as heresies of the last century, saying:

"The sanction of a dying declaration is equally efficacious whether it speaks of a murder or a robbery or a fraudulent will; and, the necessity being the same, the admissibility should be the same.  The spurious principle is recognized as unworkable in logical strictness, and, whe nfairly carried out, comes into conflict with convenience and good sense. Its limitations are heresies of the last century, which have not even the sanction of antiquity."  3 Wigmore, Evidence (2d ed.) sec. 1436.

Some eminent courts have taken the same view, though the current of modern precedent is to the contrary.  A reason for admitting dying declarations in one class of cases and excluding them in others has been recently stated as follows:

"Dying declarations are admissible in cases of felonious homicide, on the ground of public policy and necessity, since that crime is usually committed in secret, and it cannot be allowed to such an offender to commit the crime, and by the same act still forever the tongue of the only person in the world who could affirm his guilt."  1 R. C. L. 529, sec. 70.

The reasons for admitting such evidence in trials for homicidal felonies and rejecting it in prosecutions for criminal acts of sexual perverts are not based on logical

or justifiable distinctions. In cases of felonious homicide, dying declarations as proofs of guilt are generally sanctioned by the courts of the country. The reasons for applying the rule in one class of cases sanction the same kind of evidence in prosecutions for other classes of crimes. If necessity is the test, the protection of innocent children, both male and female, from the sexual depravity of moral perverts is as essential as the protection of human life from the homicidal tendency of assassins. If secrecy is the standard of admissibility, sexual crimes are generally committed in secret and the victims are sometimes children too young and innocent to testify as witnesses. I condemn the distinction as unfounded in reason and experience. I challenge the propriety or necessity of waiting for the legislature to change or make rules of evidence for the purpose of proving the guilt of malefactors who are already too numerous for the sanctity of innocence and the privilege of life.

DEAN, J., joins in this dissent.