Argued January 9; reversed and new trial awarded March 4, 1930

## McCARTY *v.* SIRIANNI ET AL.

(285 P. 825)

*F. M. Phelps* of Portland (Phelps & Burdick of Portland on the brief) for appellant.

*W. H. Morrison* of Portland (Barry & Morrison of Portland on the brief) for respondents.

McBRIDE, J. This is an action to recover for the death of plaintiff's intestate alleged to have been caused by a collision with an automobile driven by the defendant Frank Sirianni.

The principal question is as to whether the dying declarations of deceased are admissible to prove the cause of the injury. It requires no citation of authorities to settle the doctrine that such declarations were not admissible at common law, and that in most of the states of the union, the courts, either following the the common law doctrine or in compliance with statutes, have held strictly to this rule. While the rule has been often severely criticised (see 3 Wigmore on Evidence, § 1435, et seq.), we find but two states, outside of our own, which seem definitely to have broken away from it. North Carolina, by statute, and Kansas, by a declaration of her highest court, has declared the rule confining the reception of dying declarations only to criminal cases logically unsound, saying:

"We are confronted with a restrictive rule of evidence commendable only for its age, its respectability resting solely upon a habit of judicial recognition, formed without reason and continued without justification. The fact that the reason for a given rule perished long ago is no just excuse for refusing now to declare the rule itself abrogated, but rather the greater justification for so declaring; and if no reason ever existed, that fact furnishes additional justification": *Thurston v. Fritz*, 91 Kan. 468, 475 (138 P. 625, 50 L. R. A. (N. S.) 1167, 38 Ann. Cas. 212); *Vassar v. Swift & Co.*, 106 Kan. 836 (189 P. 943).

But we are not so much concerned as to what the law is in other jurisdictions as with what it now is in our own jurisdiction. It is needless to search for the earliest legislation on this subject of dying declarations. It suffices, that in the first general compilation, Deady's Code, which embraced all laws in force in Oregon up to 1864, we find in section 696, the following:

"In conformity with the preceding provisions, evidence may be given on the trial of the following facts:

\*        \*        \*        \*        \*

"4. The declaration or act, verbal or written, of a deceased person, in respect to the relationship, birth, marriage or death of any person related by blood or marriage to such deceased person; the declaration or act of a deceased person, made or done against his interest in respect to his real property; and also in criminal actions, the declaration or act of a dying person, made or done under a sense of impending death, respecting the cause of his death;"

This provision was continued through all subsequent compilations until 1909, appearing in Bellinger and Cotton's compiled laws as subdivision 4 of section 718 thereof.

At the legislative session of 1909, there appears as chapter 25 of the general laws thereof, an act entitled, "An act to amend section 718 of Bellinger and Cotton's Annotated Codes and Statutes of Oregon." The amendment consisted in re-enacting the whole section, word for word, excepting that the words "in criminal actions" were deleted, leaving the section as it now stands in section 727, Olson's Oregon Laws. There is no room for question as to the intent of this amend-

ment. As remarked by Professor Carlton E. Spencer in his article on this subject, Oregon Law Review, February, 1930:

"The words 'in criminal actions' were stricken out. The omission of these words might be laid to error, oversight or misprint, were it not for the fact that it is the only change made by the amendment. It must, therefore, be assumed that the legislature intended to remove the common law limitation on the use of dying declarations and to make them available in cases other than criminal."

This seems to be the inevitable conclusion and we now hold that evidence of the dying declarations of a person, injured in a collision under circumstances such as the present, respecting the cause of the injury resulting in his death, is admissible to the same extent and under the same limitations as evidence of such declarations made in a case of homicide. Further than this, we do not go. If any further relaxation of the common law rule seems to be in consonance with the progressive spirit of our jurisprudence, it should be carefully and cautiously made by the legislature and not by the courts.

When we reflect that a party, against whom such evidence may be invoked, is deprived of the power of cross-examination, and that it is sometimes transmitted through recollection of partizan or interested witnesses, it is best to adhere closely to the established rules in regulating its admission until legislative wisdom shall devise another procedure. Another argument, forcibly and plausibly urged, is that plaintiff's counsel made no sufficient statement of what he expected to prove by the proffered witness as to the declarations. The objection is not well taken. In the

course of the trial the plaintiff called A. G. McCarty, a brother of the deceased, and asked him the following question:

"Q. Now, I will ask you, Mr. McCarty, if during the time that your brother was in the hospital, after he was injured, and especially around about the 4th day of January, 1929, whether or not you had any conversation with him as to whether he believed he was going to live or die?"

The defendant objected on the ground that the question was incompetent, irrelevant and immaterial. Then a discussion ensued between counsel in which counsel for plaintiff read subd. 4, § 727, Or. L., claiming the evidence was admissible thereunder. Counsel for defendant insisted that the cause of the death of deceased was admitted in that it was admitted that the cause of his death was an automobile accident referred to in the pleading. The discussion continued as follows:

"Mr. Phelps:   *   *   *   "Now it is under that last section, 'respecting the case of his death'—

"Mr. Morrison: Which is not in issue. We have admitted the cause of his death.

"Mr. Phelps: You may have admitted the cause of his death, that the injuries caused his death, but this is respecting the accident that caused his death, and we believe that under that section 'and also the declaration or act of a dying person, made or done under a sense of impending death'—we want to show by these witnesses that he believed that he was going to die at the time when he gave this deposition—counsel had a right, and did cross-examine him at that time—and we believe when it says 'respecting the cause of his death', that this accident was certainly respecting the cause of Mr. McCarty's death, and under that section of the statute it is our contention that we have a right to show what happened there that caused his injuries from which he died. That is our contention.

"Mr. Morrison: We submit, if the court please, that the cause of the deceased's death is not in issue in this case, and any evidence pertaining to that is incompetent, irrelevant and immaterial. The pleadings allege that his death was occasioned by these injuries received as a result of this accident, which are admitted by the pleadings. This is not—this is a case for wrongful death, and the cause of his death is admitted by the pleadings as resulting from the injuries, and purely not within the issues of this case.

"Mr. Barry: I might supplement that, your Honor, by saying that this is a case brought to recover damages to the estate. It is purely a civil case, and all of these cases that are cited in the code are criminal cases where the dying declaration is to be used by the state. The pleadings in this case admit that this man received injuries resulting in his death. The pleadings also say that he died on January 18th, about two weeks after this alleged conversation is supposed to have taken place.

"The Court: Well, I surmise that the testimony is offered more toward a description of what happened there than the cause of death.

"Mr. Barry: Exactly.

"The Court: And I observe that there is not a single civil case cited under that in the code, which would indicate that it has never been used anywhere else except as to try to fasten guilt on somebody in a criminal case. You haven't any authorities, Mr. Phelps, on the—

"Mr. Phelps: No, I have not, your Honor. It just came to my attention this morning, and I—

"The Court: Mr. Jones, in his work on evidence, reading from volume II, in discussing the question of hearsay evidence, paragraph 334, 'Dying Declarations,' says: "Another instance in which declarations in the nature of hearsay are received as evidence, although not made under oath or tested by cross-examination, is where the statements are of the character known as dying declarations. In the sense here used, these are

declarations made by the victim in cases of homicide, where the death of the deceased is the subject of the charge and the circumstances and cause of the death are the subject of the dying declarations.'

"Now, every case cited here is a criminal case, but there are some notes in the Law Journal and some other—American Reports.

"I am of the opinion that it is not competent in a civil case. So the objection will be sustained."

We think the court was sufficiently apprised of the purpose of the question, and, in effect, ruled that evidence of dying declarations would not be admitted under any circumstances in a civil case.

The object of a formal proffer of proof is to apprise the court of the nature and bearing of the testimony, which the proponent wishes to elicit, and this, we think, was made sufficiently clear, and when the court ruled that dying declarations would not be admitted under any circumstances any further or more formal offer would have been futile.

The contention of counsel that the fact, that deceased was killed in the automobile accident being admitted, that the "cause of death" was admitted, is not tenable. The efficient cause, the proximate cause, of the death was not the collision, but the alleged negligence, if any, which produced the collision, and as to that the declarations of deceased, if shown to have been made under an absolute sense of pending death, were competent, the court, of course, being in the first instance the trier of the fact of its admissibility.

The judgment is reversed and a new trial awarded.

Coshow, C. J., Rand and Rossman, JJ., concur.