Argued February 14; reversed March 21, 1933.

# McCREDIE v. COMMERCIAL CASUALTY INS. CO.

(20' P. (2d) 232)

*Elton Watkins* and *Harold W. Peterson,* both of Portland, for appellant.

*Frank S. Senn,* of Portland (Senn & Recken and Gunther F. Krause, all of Portland, on the brief), for respondent.

KELLY, J.  The policy in suit insured against loss resulting directly or independently of all others from accidental bodily injuries, fatal or nonfatal, if suf-

fered by the said Charles Young Wigfall; and, in case of loss of his life, the amount to be paid was fixed at the sum of ten thousand dollars. Plaintiff is the beneficiary named in said policy.

In her second amended complaint, plaintiff alleges:

"That the said Charles Young Wigfall was accidentally shot on the 22d day of August, 1930, in Multnomah county, Oregon, and from and on account of the injury then received, he died on the 22d day of August, 1930".

This allegation was denied by defendant.

██ Plaintiff offered to prove alleged dying declarations of the insured as to the cause of his death. These declarations were to the effect that a stranger had shot him. The trial court sustained defendant's objections thereto.

The question, thus presented, is: When are dying declarations admissible?

Such statements are hearsay, when, as in the case at bar, not made in the presence of the party against whom they are offered. Their admissibility constitutes an exception to the rule against receiving hearsay evidence.

Three grounds for admitting them have been asserted:

1. Because the realization of impending death operates on the mind and conscience of the declarant with strength equal to that of an ordinary oath administered in a judicial proceeding.

2. Because of the necessity arising from the fact that the only eye witness has been effectually put out of the way.

3. Because of the public necessity of preventing and punishing manslaughter.

Early English cases both civil and criminal hold that dying declarations are admissible. *Wright v. Littler,* 3 Burr 1244; *Douglas Peerage Case,* 2 Harger Coll. Jurid. 397; *Omychund v. Barker,* 1 Atk. 38; *Rex v. Drummond,* 1 Leach (4th Ed.) C. L. 337; *Rex v. Woodcock,* 1 Leach (4th Ed.) C. L. 500.

In 1743 in an ejectment case, counsel for the defense in arguing an objection stated:

"In some cases, it is true, hearsay evidence is admitted from the necessity of the thing; as if a man receives a mortal wound, his declaration at the point of death would be evidence; but that is in case of the crown, in a criminal affair, and in a case of absolute necessity; which is distinguished from a civil case. Anglesea Case, 17 Howell's State Trials, 1139, 1161.

In 1803, Sergeant East, a treatise writer, made use of the following language:

"Besides the usual evidence of guilt in general cases of felony, * * * there is one kind of evidence more peculiar to the case of homicide, which is the declaration of the deceased after the mortal blow, as to the fact itself, and the party by whom it is committed. Evidence of this sort is admissible in this case on the fullest necessity; for it often happens that there is no third person present to be an eye witness to the fact; and the usual witness on the occasion of other felonies, namely, the party injured himself, is gotten rid of". 1 East's Pleas of the Crown, 353.

In a footnote to the above quoted statement, Professor Wigmore says:

"It was natural, in a chapter on Homicide, to call special attention to these considerations; but Mr. East did not and could not cite any authority for confining the evidence to such cases, and probably had no intention of making such an absolute statement". 2 Wigmore on Evidence (2d Ed.) § 1431, note 3, p. 162.

In the text, Professor Wigmore indicates that the foregoing language of Sergeant East was . misconstrued resulting in the doctrine limiting the use of dying declarations to criminal cases of homicide.

Professor Wigmore also writes:

"This language led to a change of practice, and its influence is clearly to be traced in subsequent American cases. Finally, in 1860, a note of Chief Justice Redfield, in his edition of Professor Greenleaf's treatise, gave it the widest credit and led to its general acceptance".

In 1862, a law was enacted in Oregon providing, among other things, that evidence might be given upon trial in criminal actions of the declaration or act of a dying person, made or done under a sense of impending death, respecting the cause of his death. Section 696, sub-div. 4, Oregon Code (1862); section 696, Deady's Code; section 706, Hill's Code; section 718, Bellinger & Cotton's Code.

In 1909, this statute was amended by deleting the words, "in criminal actions". Chapter 25, Laws of 1909, p. 66; section 727, L. O. L.; section 727, O. L.; section 9-226, Oregon Code 1930.

In the case of *Board of Medical Examiners v. Eisen*, 61 Or. 492 (123 P. 52), being an action to revoke a physician's license, this court, speaking through the late Mr. Justice BURNETT, used the following language:

"Over the objection of the defendant that the testimony of Dr. Hamilton and the writing [statements of Mrs. Foleen] were both hearsay, incompetent and irrelevant, the court admitted not only the testimony, but also the writing. If the death of Mrs. Foleen had been made an issuable fact by the allegations of the complaint, it would have been competent to inquire into her declarations as to the cause of her death, if they had been made under a sense of impending death".

In an action for damages for death of plaintiff's intestate sustained in an automobile collision, the dying declarations of the deceased, respecting the cause of the injury resulting in his death, were held to be admissible to the same extent and under the same limitations as evidence of such declarations made in case of homicide. *McCarty v. Sirianni,* 132 Or. 290 (285 P. 825).

The opinion in that case thus impliedly limited the admissibility of dying declarations to those cases wherein the party against whom they were offered is charged with being responsible for the death of the declarant. The learned trial judge so held.

We are not now content to follow the restrictive rule so announced. It was not necessary to declare such a rule in deciding the question considered in *McCarty v. Sirianni,* supra; and hence, its announcement was dictum. It is a rule without a reason.

If it be said that imminence of death affords solemnity sufficient to render the administration of an oath unnecessary in a homicide case, the same thing is equally true with respect to every other kind of case. So too, of punishing and preventing every other kind of an offense; and, as to the necessity arising from the fact that the declarant is the only eye witness, that condition never has been imposed as a prerequisite to the introduction of dying declarations.

To the writer it is abhorrent, to the most elementary principles of justice, to declare that such evidence may be considered in determining the question of defendant's life or death in a murder case; but not in determining rights of property.

As stated in *McCarty v. Sirianni,* supra, only one other court in the United States unsupported by ex-

press statutory authority is now in harmony with our holding herein, and that is the Supreme Court of the state of Kansas. *Thurston v. Fritz,* 91 Kan. 468, 475 (138 P. 625, 50 L. R. A. (N. S.) 1167, 38 Ann. Cas. 212); *Vassar v. Swift & Co.,* 106 Kan. 836 (189 P. 943).

There is a long list of cases to the contrary. A most interesting article upon the subject, "Dying Declarations in Civil Actions", by Mr. George S. Ryan, L. L. B., L. L. M., M. P. L., of the Massachusetts bar, appears in Vol. 10, Boston University Law Review, pp. 470, et seq. Authorities are collated in the footnotes thereto. See also *People v. Stison,* 140 Mich. 216 (103 N. W. 542, 6 Ann. Cas. 69, 112 Am. St. Rep. 397), and authorities cited in annotation thereto. *Donnelly v. U. S.,* 228 U. S. 243 (57 L. Ed. 820, 33 S. Ct. 449, Ann. Cas. 1913E, 710); *Clark v. State of Nebraska,* 114 Neb. 818 (211 N. W. 16, 49 A. L. R. 1280) and annotations.

■ The learned trial judge committed no error in refusing to give plaintiff's requested instruction to the effect that suicide must be proven by clear and convincing proof; *Herman v. East Side Logging Co.,* 135 Or. 279 (295 P. 960); *Eastman, Executrix, v. Crary,* 131 Or. 694 (284 P. 280); *Kelley v. Joslin et al.,* 123 Or. 253 (261 P. 413); *Carty v. McMenamin & Ward,* 108 Or. 489 (216 P. 228); and he is to be commended for his fidelity to the doctrine heretofore announced by this court in reference to the admissibility of dying declarations; but deeming that doctrine to be unsupported in reason, justice or logic, the judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent herewith.

RAND, C. J., BELT and ROSSMAN, JJ., concur.