### BLAIR et al. v. ROGERS.

No. 27870. March 28, 1939.

Rehearing Denied May 2, 1939.

Flansburg, Lee & Sheldahl, Twyford & Smith, and William J. Crowe, for plaintiff in error Fairmont Creamery Company.

Gill & Caldwell, for plaintiff in error M. P. Blair.

Gomer Smith and Herbert K. Hyde (Nelson Rosen, of counsel), for defendant in error.

BAYLESS, C. J. Myrtle Rogers, the widow of S. A. Rogers, deceased, recovered a judgment against M. P. Blair and Fairmont Creamery Company for the benefit of herself and daughter, as damages for the death of the said S. A. Rogers occasioned by the negligence of the defendants. The cause was tried in the district court of Oklahoma county, and the defendants have appealed.

There is one issue of law presented to us by the appealing parties which is paramount,

and since we are deciding it in accordance with their contention and are reversing the judgment, little else need be discussed.

About three days after the accident, and at a time when S. A. Rogers was in articulo mortis, Rogers made statements to his wife and to his fellow workers regarding the facts of his injury.

The trial court admitted these statements in evidence, over the objections of the defendants, upon the theory they were dying declarations and admissible in civil actions. The first error argued is that the trial judge erred in admitting this evidence, and that it was prejudicial to the defendants.

Both sides have adequately briefed the point, and they are not in disagreement relating to the general rule or to the criticisms thereof. It may be said that it is a rule of such antiquity and universality as to almost require no discussion. But the plaintiff has so earnestly presented the matter; and urged that, since this is the first time the matter has had the attention of this court, the criticisms leveled at the general rule justify this court in adopting the rule that dying declarations are admissible in civil actions in this state; that for these reasons, we have decided to consider the rule in the light of its history and these criticisms.

The rule is that dying declarations are hearsay and not admissible in civil actions, 1 R. C. L. 540; 22 C. J. 258; and cases from the following states: Alabama, Arkansas, Connecticut, Georgia, Indiana, Idaho, Iowa, Illinois, Kentucky, Louisiana, Massachusetts, Missouri, Michigan, Nebraska, New Jersey, New York, North Carolina, Ohio, North Dakota, Pennsylvania, Tennessee, Texas, Washington, and Wisconsin. See, also, 49 A. L. R. 1287, 91 A. L. R. 561. While it is a criminal case, the opinion of the Supreme Court of the United States in Donnelly v. United States, 228 U. S. 243, 57 L. Ed. 820, contains an excellent discussion of the rule relating to the admissibility of dying declarations in homicide cases, and the reasons why this exception to the hearsay evidence rule should not be extended further.

In the United States there is, at this time, singularly little division among the opinions on this point. As contrasted to the array of jurisdictions applying the rule as above stated, only five states apply the contrary rule, and only one of these by judicial fiat. In Kansas the Supreme Court considered the general rule, and the criticisms thereof, and deliberately departed from the general rule. Thurston v. Fritz, 91 Kan. 468, 138 P. 625. In Oregon there was a statute expressly admitting dying declarations in criminal cases, but later this statute was amended by striking out the words "in criminal cases", and in McCarty v. Sirianni, 132 Ore. 290, 285 P. 825, it was held that this amendment clearly evinced the legislative intent to make dying declarations admissible in all cases, criminal and civil. When considering this matter further in the later case of McCredie v. Commercial Cas. Ins. Co., 142 Ore. 229, 20 P.2d 232, that court went further and adopted the view of the Kansas court. Since it took the first step in this direction at the behest of the Legislature, it was no difficult matter for it to see logical reasons for adopting this as a rule of reason; but it is difficult for us to know what it would have held in the absence of this legislative inducement. In Arkansas, prior to the enactment of section 1, Act 45, of 1935 (approved March 16, 1935), the court followed the general rule. St. Louis, I. M. & S. Ry. Co. v. Enlow, 115 Ark. 584, 171 S. W. 912 (1914). The same was true in North Carolina prior to the enactment of section 160, N. C. Code Ann. 1927. Barfield v. Britt (N. C.) 2 Jones L. 41, 62 Am. Dec. 190, expressly overruling McFarland v. Shaw, 2 Car. L. R. 102. The general rule was long applied in Massachusetts (Chapin v. Inhabitants, 9 Gray, 244, and Thayer v. Lombard [1896] 42 N. E. 563) ; but under section 65, ch. 233, Gen. Laws Mass. Ter. Ed., dying declarations are admissible in civil actions in certain circumstances. See O'Brien v. Bernoi (Mass.) 8 N. E.2d 780. Thus is shown the extent of the departure from the general rule, and the reasons therefor.

The changes brought about in Oregon, Arkansas, Massachusetts, and North Carolina become significant in the light of the criticisms of the general rule made by Professor Wigmore. Wigmore on Evidence (2d Ed.) vol. 3, p. 160, secs. 1430 et seq. While he attacks the general rule which excludes such declarations in civil actions as being based upon dubious authority and as entirely lacking in logic to support it or to differentiate it from the rule in homicide cases, he nevertheless suggests that changes be accomplished by legislative action rather than by judicial fiat. This suggestion takes on added weight when the numerous kinds of actions in which such declarations would be admissible in civil actions, if the general rule is rejected, are contrasted with the limited type of actions wherein such are admitted in Arkansas, Massachusetts, and North Carolina. We observe that the general rule with respect to criminal cases is that such declarations are admissible in homicide cases only, and Professor Wigmore stands against this rule as strongly as against the rule with

respect to civil actions. We agree with him that if another rule is to be adopted, the Legislature should provide for it.

It may be said that, since this is the first time this court has had occasion to pass upon the matter, it is not bound to wait for legislative action, but may join in the procession already formed and follow after them. The difficulty with this is that we are not impressed with the correctness of their position.

The rule that dying declarations are admissible in homicide cases is of universal application in the United States, but this rule has not escaped the severest criticism. Nor has it been adopted and applied without difficulty in logic and reason in view of the general constitutional provisions relating to fair trials in criminal prosecutions. 30 C. J. 251, et seq., and especially sections 495 and 496, and the cases cited and discussed thereunder. We call attention to Railing v. Comm., 110 Pa. 100, 1 Atl. 314, 6 Am. Cr. Rep. 7, and Donnelly v. United States, supra. Perhaps the most candid statement of the reason back of the rule in homicide cases is that in 1 R. C. L. 529: "* * * of public policy and necessity. * * *" The conditions which bring public policy or necessity into homicide cases, and the circumstances under which these declarations are made competent, may not be more available nor are they more superable in homicide cases than in other criminal cases or civil actions. But the rules are the direct opposites by long usage and general approbation.

From the arguments of plaintiff's counsel before the court, and from their briefs, we apprehended that there might be discovered a well-defined tendency in the later decisions on the part of the courts to veer away from the general rule with respect to civil actions because of the criticism heretofore mentioned. Our search of the decisions does not uncover such a tendency. Schabo v. Wolf, etc., Co., 201 Wis. 190, 229 N. W. 549; Nichols v. Smith's Bakery, 218 Ala. 607, 119 So. 638 (1928); Davis v. Metropolitan Ins. Co., 48 Ga. App. 179, 172 S. E. 467 (1934), and Clark v. State, 114 Neb. 818, 211 N. W. 16 (1926). See other cases cited under Evidence, Key No. 275½, Am. Dig. The last case cited, supra, was a criminal prosecution for sodomy, and the dying declaration of the injured party was refused because such declarations are admissible only in homicide cases. There was a strong dissent. In the Alabama case, supra, it is said:

"Dying declarations are inadmissible in any form of civil action. We are not unmindful of the criticisms leveled at this rule. We are not disposed to debate them further than to say like criticisms are indulged as against their admission on the doctrine of necessity in murder trials. We adhere to the law as written."

There has been a tendency to enact statutes to this purpose in more recent times, but no tendency on the part of the courts to do so of their volition.

The discussion of the subject which appears in the annotation in 49 A. L. R. 1282 (1282-1284) very well sums up the general rule respecting the admissibility of dying declarations in actions. It reads in part:

"Under the early common law there was a general tendency to admit dying declarations in criminal cases. 1 R. C. L. 540. A situation so solemn as that of one consciously approaching death warranted, in the opinion of the early English jurists, the admission of dying declarations in both civil and criminal cases, and, according to Greenleaf, this was apparently the original practice. 1 Greenl. Ev. (16th Ed.) sec. 156a. However, it is a well-established rule now that they are admissible as such only in cases of homicide, where the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the dying declaration. 1 Greenl. Ev. (16th Ed.) sec. 156a, and cases cited infra in this annotation. The reason for admitting such declarations in prosecutions for felonious homicide was one of necessity, since that crime is usually committed in secret, and it should not be allowed to such an offender to perpetrate the offense, and by the same 'act silence forever the tongue of the only person in the world who could affirm his guilt. 1 R. C. L. 529. Professor Wigmore severely assails the rule restricting dying declarations to the situation pointed out above, and in very cogent language observes: 'The sanction of a dying declaration is equally efficacious, whether it speaks of a murder, or a robbery, or a fraudulent will; and, the necessity being the same, the admissibility should be the same. The spurious principle is recognized as unworkable in logical strictness, and, when fairly carried out, comes into conflict with convenience and good sense. Its limitations are heresies of the present century, which have not even the sanction of antiquity. They should be wholly abolished by legislations.' 2 Wigmore, Ev. sec. 1436.

"There is, however, a distinction bearing on this subject between homicide cases and other classes of cases, when considered generically, by reason of the point suggested in the previous statement from Ruling Case Law, when it is considered that the act charged against defendant in a homicide case,—at least, when it imputes to him an intention to effect the victim's death,—if in fact committed by him, necessarily, inevitably, and by intention, brings about the very condition which deprives the prosecution of the victim's testimony as a witness. Criminal charges, or allegations in a civil case, which do not impute to defendant an intention to

effect death, therefore, do not, considered as a class, create the same necessity for the admission of dying declarations, although in the individual instance the act with which defendant is charged may, without that effect having been intended, have resulted in the victim's death and so closed his or her lips as a witness, as is illustrated in cases where the defendant is charged with abortion, and the prosecution claims that the alleged victim died as the result of his act. As subsequently shown, the rule admitting dying declarations has in a few jurisdictions been extended to the latter class of cases, notwithstanding the distinction suggested between them and the homicide cases, in which the intention to effect death is imputed to defendant. In the main, however, Legislatures and courts have refused to extend the rule beyond homicide cases to embrace even those cases in which the defendant's act, though not charged to have been committed for that purpose and with that intention, did result in the alleged victim's death, and so rendered his testimony as an ordinary witness unavailable. It is true, of course, that the consideration and distinction just referred to do not make the admission of dying declarations any less dangerous in homicide cases than in other classes of cases, since the question is whether or not the defendant was in fact guilty of the acts charged, but it does tend to demonstrate that, generally considered, there is a greater inherent necessity for the use of evidence of a character which, at best, is unsatisfactory and dangerous in its tendency, in homicide cases than in other classes of cases. Apart from theoretical and technical distinctions, the conservatism of Legislatures and courts in refusing to extend the scope of the rule which admits dying declarations beyond homicide cases is doubtless due to the recognition of the dangers of a character of evidence which is without the sanction of an oath, or the pains and penalties of perjury, and admits of no opportunity of cross-examination. These objections have often been voiced. They are well stated in Railing v. Com. (1885) 110 Pa. 100, 1 Atl. 314, 6 Am. Crim. Rep. 7, in which the court said: 'The objections to the admission of such testimony (of dying declarations) are of the gravest character. It is hearsay, it is not under the sanction of an oath, and there is no opportunity for cross-examination. It is also subject to the special objection that it generally comes from persons in the last stages of physical exhaustion, with mentality necessarily impaired to a greater or less extent, and, at the best, represents the declarant's perceptions, conclusions, inferences, and opinions, which may be and often are, based upon imperfect and inadequate grounds. Nor is the reason ordinarily given for their admission at all satisfactory. It is that the declarant, in the immediate presence of death, is so conscious of the great responsibility awaiting him in the near future if he utters falsehood that he will, in all human probability, utter only the truth

The fallacy of this reasoning has been many times demonstrated. It leaves entirely out of account the influence of the passions of hatred and revenge, which almost all human beings naturally feel against their murderers, and it ignores the well-known fact that persons guilty of murder beyond all questions very frequently deny their guilt up to the last moment upon the scaffold."

In addition to this, we call attention to the subdivision of the annotation relating to civil cases beginning at page 1287, supra. See, also, Jackson v. Kniffen, 2 Johns. (N. Y.) 31 (1806), and Wilson v. Boerem, 15 Johns. (N. Y.) 286 (1818).

It is to be observed that the dying declarations admitted in homicide cases are limited strictly to the res gestae of the cause of the death, and the declarant is not permitted to wander afield. Mulkey v. State, 5 Okla. Cr. 75, 113 P. 532, and Wratislaw v. State, 18 Okla. Cr. 150, 194 P. 273. The record before us would represent an abuse of that rule. Much of the statements admitted was extraneous to the res gestae, and was highly prejudicial.

It seems to us that the Kansas decision in which that court determined to reject the general rule constitutes an extreme in the application of the rule adopted. The declarant in that case had known for some time that he was ill, and could reasonably be charged with some apprehension of his expectancy considering his age and condition. He likewise knew of his claim against the purchasers of his land, and actually made claim on them in his lifetime. He could have filed an action in his lifetime and could have given his deposition therein, or if his cause of action was not ripe, he could have perpetuated his testimony. It seems to us that there did not exist in that action any degree of public policy, or necessity or other excuse for permitting the declarant, when in articulo mortis, to dispose of his worldly affairs as against third persons by ex parte affidavits. Whatever valid criticism may be properly leveled against the general rule in civil actions, it is aided but little by this decision. In the case of Donnelly v. United States, supra, a man charged with murder sought to introduce the dying declaration of another man wherein he confessed the murder. This evidence was material to the defendant because it was the theory of the prosecution that only one man committed the murder. The value of this evidence to the defendant was recognized, but yet the court said:

"Hearsay evidence, with a few well-recognized exceptions, is excluded by courts that adhere to the principles of the common law. The chief grounds of its ex-

clusion are that the reported declaration (if in fact made) is made without the sanction of an oath, with no responsibility on the part of the declarant for error or falsification, without opportunity for the court, jury, or parties to observe the demeanor and temperament of the witness, and to search his motives and test his accuracy and veracity by cross-examination, these being most important safeguards of the truth where a witness testifies in person, and as of his own knowledge; and, moreover, he who swears in court to the extra-judicial declaration does so (especially where the alleged declarant is dead) free from the embarrassment of present contradiction, and with little or no danger of successful prosecution for perjury. **It is commonly recognized that this double relaxation of the ordinary safeguards must very greatly multiply the probabilities of error, and that hearsay evidence is an unsafe reliance in a court of justice.** * * *

"[228 U. S. 243, 33 S. Ct. 449, 57 L. Ed. 820, 834] Chief Justice Marshall said: 'These several opinions of the court (meaning the trial court) depend on one general principle, the decision of which determines them all. It is this: That hearsay evidence is incompetent to establish any specific fact, which fact is in its nature susceptible of being proved by witnesses who speak from their own knowledge. * * * It was very justly observed by a great judge that "all questions upon the rules of evidence are of vast importance to all orders and degrees of men; our lives, our liberty, and our property are all concerned in the support of these rules, which have been matured by the wisdom of ages, and are now revered from their antiquity and the good sense in which they are founded." One of these rules is that 'hearsay' evidence is in its own nature inadmissible. That this species of testimony supposes some better testimony which might be adduced in the particular case is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible. * * * The danger of admitting hearsay evidence is sufficient to admonish courts of justice against lightly yielding to the introduction of fresh exceptions to an old and well established rule the value of which is felt and acknowledged by all. If the circumstance that the eyewitnesses of any fact be dead should justify the introduction of testimony to establish the fact from hearsay, no man could feel safe in any property, a claim to which might be supported by proof so easily obtained. * * * **This court is not inclined to extend the exceptions further than they have already been carried.'** "

The absence of an opportunity to confront the declarant, or to cross-examine him, hereinbefore pointed out, is referred to and considered in a number of cases, including Ross v. Cooper, 38 N. D. 173, 164 N. W. 679. In that case it was pointed out that the length of time which passed between the injury and death permitted the taking of depositions.

There also runs through the decisions the idea that, irrespective of the guaranty of truthfulness supposed to inhere in a declaration made in the face of death, there nevertheless is present the element of afterthought. It is apparent that such declarations differ materially from those constituting res gestae. This was pointed out in Davis v. Metropolitan Ins. Co., supra, wherein the decision in East Tenn., etc., Ry. Co. v. Maloy, 77 Ga. 237, 2 S. E. 941, was quoted from, as follows: "What the law altogether distrusts is not afterspeech but afterthought". This is clearly demonstrated in the action we are considering. Those who reached Rogers immediately after the accident, and who aided in extricating him from the wreckage, quoted him as saying, in effect, that he must have gone to sleep, or he must have been asleep. These statements were admitted as a part of the res gestae, and no complaint was made on that point. These statements varied materially from those given as a part of his dying declarations, and give rise to the distrust expressed in the above quotation.

Upon consideration of the matter, we have determined to adhere to the general rule, and nothing which has been called to our attention has appeared to us to have sufficient merit to justify us in going contrary to the overwhelming weight of judicial authority. Dying declarations have been admitted in this jurisdiction in homicide cases only on common-law principles before and since statehood. See Key No. 200-221, Homicide, Okla. Dig. (West). Our Legislature has not seen fit to legislate on the matter. As suggested by Professor Wigmore, if there is to be such a rule in Oklahoma in civil actions, the Legislature should have the right to say so.

Since we are of the opinion that error was committed in admitting such declarations over objections, and since we are further of the opinion that the same was prejudicial to the rights of the defendants, the judgment of the trial court must be, and is, reversed.

Reversed.

RILEY, OSBORN, CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., and DANNER, J., absent.