## TUNSTALL, Adm'x, v. MEAD-PHILLIPS DRILLING CO.

### No. 23584.   Oct. 16, 1934.

J. M. Huser and Biggers, Fowler & Biggers, for plaintiff in error.

Hal Crouch, A. S. Wells, and Philip N. Landa, for defendant in error.

BAYLESS, J. The plaintiff in error, Mrs. Effie Mae Tunstall, administratrix of the estate of Harry T. Tunstall, who was plaintiff below, appealed to this court from an order and judgment of the district court of Seminole county, Okla., sustaining the demurrer to her evidence, interposed by Mead-Phillips Drilling Company, a corporation, defendant below, defendant in error herein. The parties will be referred to as they appeared in the court below. The plaintiff instituted the action to recover damages for the wrongful death of her deceased husband against the Prairie Oil & Gas Company and defendant on the theory that he was employed by defendant and his death was brought about by its negligence.

The record discloses the Prairie Oil & Gas Company settled with plaintiff. The cause was dismissed with prejudice as to Bass Moore Trucking Company. No service was had on defendant Independent Casing Crew.

The evidence of plaintiff is this: Prairie Oil & Gas Company owned a lease in Seminole county, Okla., and contracted with the defendant to drill a well thereon; Harry T. Tunstall, husband of plaintiff, was employed by or was a member of Independent Casing Crew; plaintiff's petition alleges that this casing crew was employed by the defendant to perform services connected with the drilling of the well, but there is no evidence in the record as to who actually employed the casing crew; that the defendant and the casing crew were paid for their services by Prairie Oil & Gas Company, and the husband of plaintiff received from the casing crew his proportionate share of its earnings; that certain of the casing furnished by Prairie Oil & Gas Company to be used in the drilling operations was defective; that defendant requested Prairie Oil & Gas Company to furnish other casing to replace this defective casing, and Prairie Oil & Gas Company did so; that Prairie Oil & Gas Company employed a trucking company to deliver this casing to the well; that drilling operations were temporarily stopped until this casing was received; that the trucking company sent a truck to the well, loaded with about 15 joints of casing, each joint weighing about 1,000 pounds; that it was customary to unload this casing by loosing the casing, joint at a time, from the truck and permit it to roll down a sloping runway to the ground at a point near a rack upon which it was placed to be handy for use by the casing crew in running it to the well; that the defendant had a drilling crew there consisting of two men; that the trucking company had a crew, with the truck delivering the casing, consisting of two men; and, that the casing crew was comprised of five men; that it was no part of the casing crew's duty to unload this pipe; that preparations for unloading the pipe were

commenced with practically all members of all of the crews taking part therein; that Bill Ford, the driller employed by defendant and on duty at this time, was, by the customs of the oil fields, in charge of drilling operations and could give directions to the casing crew concerning the performance of any duties for which the casing crew was employed; that Tunstall was observed to be talking to the driller when the unloading preparations began, and he thereupon left the driller, procured a length of two inch pipe, went to the foot of the runway and took a position where, by the use of this pipe, he could brake or scotch or stop the joints of casing as they rolled to the foot of the runway and onto the ground; and that in some manner, not exactly described, the crew in charge of the truck and pipe loosed all 15 joints of pipe from the truck onto the runway at one time; that this mass of casing rolled down the runway and against the length of pipe held by Tunstall and the force of this descending mass of casing striking this pipe caused it to strike Tunstall across the head, thereby inflicting fatal injuries. It may be said that no one heard what the driller said to the deceased in the conversation observed, but the court permitted an employee of defendant to testify, apparently as a part of the res gestae, that the driller said after this injury he had told Tunstall to go to the position of duty in which he was killed. When the plaintiff rested, the defendant demurred and this demurrer was sustained.

The argument of plaintiff may be summarized thus: That defendant, by reason of the act of its agent in directing Tunstall to do this work, became his employer for the time being, and, by directing him into an unsafe place to work, or into a place in which it became unsafe to work, thereby became guilty of actionable negligence which resulted in his death while in the performance of these duties at this place.

The record does not show that it was the duty of the defendant to unload and rack this pipe. It may not be unreasonable to infer that, having, through its agent, undertaken this duty, it either was its duty or it voluntarily assumed this duty in furtherance of the operations for which it contracted. In view of this inference it is not unreasonable to infer further that, having, through its agent, given Tunstall orders in relation to this work, either obligatory or voluntarily undertaken, it thereby made him its servant in connection with this work. This evidence, judged by a demurrer, is sufficient to justify the court in mak-

ing these inferences, thereby establishing, for the purposes of the demurrer, the relationship of master and servant between the defendant and Tunstall.

The plaintiff recognized that she must go beyond this point, however. The master must be subject to being charged with primary or actionable negligence before he can be held liable for injuries to an employee. St. L.-S. F. Ry. Co. v. Hartless, 115 Okla. 38, 241 P. 482. The plaintiff says that this primary negligence consisted of sending Tunstall into a dangerous place to work. There is no evidence that this was a dangerous place in which to work; by this we mean, that no witness, competent to give such testimony, said it was dangerous. But the plaintiff in response to this invoked the rule of res ipsa loquitur. None of the elements necessary to support this rule are present. See 45 C. J. 1204, sec. 772, et seq. In addition to this, it is not shown that the tools, apparatus, and appliances used in the performance of the work connected with the unloading of this pipe were defective or unsuitable.

Finally, it must be said that there is direct proof of the incident which set in motion the chain of circumstances resulting in the death of Tunstall in this, to wit, proof of the act of the crew in losing all these joints of pipe at one time, whether done intentionally or accidentally. This direct evidence of the acts of a third person destroys the idea that the death of Tunstall was caused by some presumed or inferred negligence on the part of the defendant incapable of being specifically pointed out.

Judgment affirmed.

RILEY, C. J., and McNEILL, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and SWINDALL, ANDREWS, and OSBORN, JJ., absent.