## 14268

LANGSTON v. FISKE-CARTER CONSTRUCTION COMPANY

(185 S. E., 62)

May, 1935.

*Messrs. Willcox, Hardee & Wallace,* for appellant,

*McEachin & Townsend,* for respondent,

April 2, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by the plaintiff for the recovery of damages for personal injuries alleged to have been sustained by him on June 5, 1934, while employed by the defendant, Fiske-Carter Construction Company, as a water boy.

The defendant was engaged at the time in the building and construction of an addition to the McLeod Infirmary, in the City of Florence. It was the duty of the plaintiff to carry buckets of drinking water to other laborers and carpenters who were engaged in work upon the building, on its second floor. In order to do this, the plaintiff used a ladder, furnished for this purpose by the defendant, the bottom end of which rested unsecured upon the ground. The ladder extended upward at an angle of 35 or 40 degrees, and its upper end rested upon the concrete floor of the second story. An elevator was in operation in the rear of the building for the purpose of carrying up building material from the basement to the upper floors, but no workmen were permitted to use the elevator. At the time of the accident the building had not reached the stage of construction where any stairways had been built, and the workmen were confined to the use of outside ladders to reach the place in the building where their work called them.

The basement of the building was about four feet below the level of the ground, and, as said, the upper end of the ladder rested upon the concrete laid for the second floor. The work of construction had been going on for about a month. Five or six ladders were arranged about the outside of the building at strategic points, most convenient for the use of the workmen, in going up and down. The ladders were not fastened, were movable, and were always taken away from the building every week-end, to discourage trespassers from interfering with the partially completed structure, and they were replaced during the work week. It was the duty of the foreman or the superintendent to direct the removal of these ladders from place to place as the progress of the work might require.

At the time of the accident, the plaintiff was walking up a ladder which was placed against the middle of the building on the street side, and which had been located there and used by him and other workmen for one or two weeks previous to the accident. He had a bucket of water in each hand, one of which was for the colored laborers and one for the white laborers. According to his statement, as he reached a point about three feet from the ground, and had placed his foot or feet on the third round, it broke, precipitating him to the ground. He fell upon his head and side, and received the injuries of which he now complains. In falling his head came in contact with an exposed nail, projecting from a timber lying on the ground, from which he sustained a wound over his left eye. The ladder was examined after the accident, and this round was found to have an old crack on the underside, and the examination also showed where it was freshly broken. The testimony for the defendant tends to show that the rung or round in question had not broken, but that it had a sag of about one and one-half inches in the middle; that it had an old lateral crack, and showed evidence of a fresh crack; and one of the witnesses for the defendant described the defect in the rung by stating that it exhibited a "shivered" condition. And this same witness testified that "they never told us to stay off it. I guess if Mr. Baker (the superintendent) had saw the shiver, he would have kept us off it," and "would have had a new rung put in it."

At least two or three witnesses had noticed the old break on the underside of the rung, but the plaintiff testified that he was entirely ignorant of any defective condition in the ladder. It appears from the testimony that it was not a home-made ladder, but a manufactured ladder of the usual type, with round hickory rungs, and the plaintiff stated that it was an old ladder, and had seen much use. The crack or defect in the rung, according to all of the witnesses, was not noticeable from the top side. It was "behind the ladder."

There was also testimony for the defense to the effect that,

as the plaintiff started up this ladder with a bucket of water in each hand, a workman, who was idle at the time and standing a few feet from the foot of the ladder, asked him for a match; that there was mud on plaintiff's feet, and as he turned his head his foot slipped, and he fell.

The specifications of negligence alleged in the complaint are these: (a) In failing to provide the plaintiff with a safe place to work, in that the ladder furnished the plaintiff was defective and unsafe for use; (b) in failing to provide the plaintiff with safe and suitable equipment with which to work, in that the said ladder had a cracked or otherwise defective rung, and was unsafe for use by the plaintiff; (c) in failing to inspect the ladder; (d) in failing to supervise and superintend the work and the equipment; (e) in failing to warn the plaintiff that the ladder was defective and unsafe for use, when the condition of the ladder was known, or ought to have been known, to the defendant; and (f) in allowing the ground about the ladder to become cluttered with boards and pieces of timber containing exposed nails.

The answer admitted the employment of the plaintiff, denied negligence, and set up the defense of contributory negligence and assumption of risk.

The trial resulted in a verdict for the plaintiff in the sum of $12,500.00.

During the course of the trial motions were made for a nonsuit, and a directed verdict, and for a new trial. In addition to the grounds of the motion for a directed verdict, the motion for a new trial included the additional ground that the verdict was so excessive that it should be set aside. All of these motions were overruled.

The first question raised by the exceptions which we shall discuss is, Was there a variance between the allegations of the complaint and the proof?

It is earnestly contended by the appellant that there is no charge in the complaint that the ladder used by the plaintiff was provided by the defendant as a means of ingress to and

egress from the building, nor that it was being so used by the plaintiff upon the occasion upon which he was injured. It is argued that the plaintiff shifted his ground of attack from that alleged in his complaint; that the complaint alleges negligence against the defendant in the furnishing of a defective ladder, which is a simple tool, but that the proof, if any, tends to make out a case of negligence in furnishing a defective ladder to be used as a stairway in entering and leaving the place of work; and it is further submitted that this alleged change of front on the part of the plaintiff was made to escape the application of the "simple tool" doctrine.

The Circuit Judge, under his charge, left it to the jury to determine the nature and character of the ladder and the use to which it was put.

Defendant contends that this alleged discrepancy between the allegations of the complaint and the proof submitted was pointedly called to the attention of the trial Judge, and that the trial Judge indicated that, since there had been no demurrer to the complaint, this position was not available. If in ruling upon the point the Judge gave an incorrect reason for a correct conclusion, it matters little.

Appellant's brief contains this statement: "There was presented, therefore, a plain case of variance, and defendant's remedy was manifestly not to demur, as held by the trial Judge, but to object to testimony when offered as proof, not of the allegations of the complaint, but of facts and circumstances not even adverted to in the complaint."

They state further that they were taken by surprise, and that they had no means of knowing that plaintiff was being permitted to change his cause of action until the motion for a directed verdict was made and passed upon by the trial Judge.

However, the record shows that no suggestion of any kind was made to the trial Judge of a variance until he had completed his main charge to the jury and had taken up the defendant's requests to charge. Nor

was it at that time indicated in any way to the trial Judge that the defendant had been misled or taken by surprise by the testimony, nor was any motion made to require the plaintiff to amend his complaint or to give to the defendant an opportunity to meet what they now allege to be a new issue. It is too late to raise the question of variance for the first time on appeal. *Devlin v. Charleston, etc., R. Co.,* 79 S. C., 469, 60 S. E., 1123.

The record does not show that the defendant at any time from the beginning of the trial to its end objected to any testimony offered as proof that the ladder was used as a stairway. On the contrary, much of this testimony was developed from witnesses for the defendant. We think that there is a great deal in the record to show that the appellant might well have taken alarm over this question which we are now considering much earlier in the trial of the case than that stage of the case when the motion was made for the directed verdict. The very first witness for the plaintiff testified that the ladder was used "as a stairway, going back and forth on the building."

The second witness for the plaintiff testified that the ladder was used "in the place of a staircase for everybody to go up on," and that the ladder was "used as a stairway from the ground to the floor" by the workmen. This witness, upon cross examination by the defendant, testified, "They used a ladder until stairs was built."

In overruling the motion for nonsuit, the trial Judge explicitly stated, "It (the ladder) was more like a staircase than a ladder," and differentiated this case from those cases involving the "simple tool" doctrine.

One of the defendant's witnesses testified upon cross examination that the stairs were not completed at the time of the accident, and that "they used the ladder as a stairway."

Another witness for the defendant testified that the ladders were "used as a stairway." And it was this witness who further testified that, if it were necessary to move the

ladders from one place to another, this was the duty of the foreman or superintendent.

It not infrequently occurs on the trial of a case that there is a want of harmony between the facts alleged in the pleadings and the facts established by the evidence on the trial. Under the old system of practice, a variance between the pleadings and the proofs might be fatal to a good cause of action or to a valid defense. To obviate defects in the old system, the Code provides that no variance between the allegations in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits; and that, whenever it shall be alleged that a party has been so misled, that fact must be proved to the satisfaction of the Court, and also in what respect he has been misled. Upon such proof being made, the Court is authorized to order the pleading to be amended upon such terms as shall be just. 1932 Code, § 490.

But, where the variance is not material, as above provided, namely, when the party has not proved that he has been actually misled, the Court may either direct the fact to be found according to the evidence or may order an immediate amendment without costs. 1932 Code, § 491.

But, if an allegation is not proved, not in some particular or particulars only, but in its entire scope and meaning, it is not to be deemed a case of variance, but a failure of proof. 1932 Code, § 492.

These provisions of the Code introduced a principle unknown to the former practice, namely, that of determining questions of variance, not by the want of harmony between the pleadings and the proof, and thence inferring its effects upon the preparation the adverse party could make for a trial, but by direct proof *aliunde* as to whether the party was actually misled to his prejudice by the incorrect statements of the pleadings or not. *Catlin v.*

*Gunter,* 11 N. Y., 368, 62 Am. Dec., 113; Wait's Practice, Vol. 3, page 165.

The very question here under consideration was discussed in the case of *Wilson v. Kearse,* 145 S. C., 155, 143 S. E., 15, 16 where the Court said, quoting briefly from *Ahrens v. State Bank,* 3 S. C., 401: "Under Section 192 (432), no variance is to be regarded as material unless it has actually misled the party, and in that case his remedy is to satisfy the Court immediately, by proof by affidavit, that he has been so misled. The effect of such proof is not to prevent the Court from allowing an amendment to such case, but to entitle the party prejudiced by such amendment either time or such other compensatory terms and conditions as may be reasonable"; and the Court goes on to hold that, if the party prejudiced by such variance fails to take advantage of the remedy afforded under this section, then it is the duty of the trial Court to disregard the variance as immaterial, and either to order an immediate amendment or to direct the fact to be found according to the evidence.

We think it entirely clear that, even if the record shows the alleged variance, the defendant failed to make timely motion and proof, or any motion or proof at all, to bring itself within the statute.

But, aside from this, we think the evidence was competent. The plaintiff is required under the Code only to allege ultimate facts, and not evidentiary matter. It is alleged in the complaint as one of the specifications of negligence that the defendant failed "to provide the plaintiff with a safe place to work, in that the ladder furnished the plaintiff was defective and unsafe for use." It was not necessary to allege that the ladder was being used as a stairway for ingress to, and egress from, the building. It was alleged that the plaintiff was engaged in carrying buckets of drinking water up this ladder to the second floor of the building. The testimony now objected to was in response to these allegations. We are unable to see how the testimony on this

issue could have taken the defendant by surprise. The complaint definitely charged the defendant with negligence in failing to provide a safe place to work. Under neither view of the question is the case of *Scott v. A. C. L. Railroad Company,* 105 S. C., 385, 89 S. E., 1038, in point; nor is the case of *Johnson v. A. C. L. R. R. Co.,* 142 S. C., 125, 140 S. E., 443, applicable.

The appellant insists that the trial Judge under the pleadings and the facts should have charged the jury that the ladder in this case was a "simple tool." We think the charge of the trial Judge was correct, and that he took the proper view of the law, and drew the proper distinction between the facts of this case and those cases which hold that a ladder is a simple tool—such as *Roper v. Ware Shoals Mfg. Co.,* 139 S. C., 48, 137 S. E., 210, and *Rodgers v. Pacific Mills,* 161 S. C., 376, 159 S. E., 655.

He charged the jury: "But where the master has servants working and requires them to go to the place of work and uses a ladder that is under the control of the master and the servant has no control of it, if it is under the supervision and control of the master, the servant has no right to deal with the ladder except to use it along with other persons as a means of getting up to the place where he has to work. I charge you that a ladder of that sort, the master is not relieved of his duty to furnish a servant with a reasonably safe place to work. In other words, where the ladder was used in the nature of steps in order for a person to go over the place to do his work, the law does not relieve him to furnish a reasonably safe place to work. I charge you, if the defendant failed to furnish him a reasonably safe place to go to his work, that then they would be derelict in their duty, they would be negligent, and, if by reason of that negligence plaintiff was injured, then he would have a right to recover from the master. When the master appoints someone to perform a duty that the master owes to the servant and that person fails to provide a reasonably safe place for him to

work or to furnish him with reasonably safe tools, why then the master would be responsible, because the person so appointed was his agent, and the agent himself would be responsible if he failed to do his duty."

A ladder is a "simple tool" when it is used as a tool. What is known as the simple tool doctrine is inapplicable to the facts of the present case, because the ladder was not in the custody and in the full charge and under the control of the plaintiff, nor used by him as a tool. He, as a water boy—probably the lowliest grade of employment on any construction job—had no power of selection under the evidence nor any individual authority over the placing of the ladder he used. He did not carry it from place to place, and had no such intimate acquaintance with it as would be implied by the simple tool doctrine. The testimony shows that the ladder which he used was not at his absolute disposition, but its placing and location was directed by the superintendent; it was used as an independent and separate part of the equipment of the master, and was entirely in the master's custody and under its control. It was the duty of the plaintiff, as water boy, exercising ordinary care, to take the buckets of water up this ladder, if not obviously defective. He used it as he found it placed for his use, just as he would have taken water up a stairway, had there been a stairway to use. The fact that the ladder was not fastened or secured in a permanent sense is not material under the facts in this case.

A most illuminating case, very applicable here, is *Collonna Ship Yard, Inc., v. Bland,* 150 Va., 349, 143 S. E., 729, 732, 59 A. L. R., 497, where a carpenter had to use a ladder in descending to, and ascending from, the hold of a ship. Time and space are lacking to comment at length upon the principle announced in this case. The Court held under the facts that the "simple tool" or "common tool" doctrine did not apply, and held that "the defective ladder which caused the injury in this case is not such an appliance; not a tool. On

the contrary, it is rather a place, the equivalent of a stair-case, a way which the plaintiff was directed by his employer to use as his means of access to and from the hold of the vessel, his place of work."

We have no intention, as was also stated in *Collonna Ship Yard, Inc., v. Bland, supra,* of impinging in the slightest degree upon the "simple tool" doctrine or the line of cases in which employees having control of and using movable ladders were denied the right of recovery.

In the instant case, as stated, the plaintiff had no control over this ladder. While movable, it was in no sense an appliance intrusted to the plaintiff for his use in connection with the work. It was not in his custody; it was accessible to, and used by, the other workmen; he had no reason to doubt its efficiency, and was not charged with any specific duty to inspect it. The buckets wherewith he carried water were his tools and appliances and not the ladder.

The exceptions dealing with the defenses of actionable negligence, assumption of risk, and contributory negligence will be treated together.

The Court cannot say as a matter of law, under the evidence in this case, that the plaintiff assumed the risk, or that he was guilty of contributory negligence, or that the defendant was free from negligence. These were questions of fact for the jury, and they were fairly submitted to the jury in a very full, clear, and comprehensive charge by the trial Judge.

The duty of inspection by the master is ordinarily non-delegable. While the master is not an insurer, the servant has a right to assume that the place to work and the appliances furnished him are reasonably safe and suitable for the work he is employed to do, and that they will be kept and maintained in such condition. He is not held to have assumed the risk where it does not appear from the testimony, exclusive of any other reasonable inference, that he knew of the defect, appreciated the danger, or that they

are so obvious that an ordinarily prudent person would have observed and appreciated them. *Tyner, Adm'r, v. A. C. L. R. R'. Co.,* 149 S. C., 89, 146 S. E., 663.

The appellant correctly states the law applicable to ■ negligence to the effect that the authorities in this State are uniform in holding that the doctrine of *res ipsa loquitur* does not obtain in this jurisdiction. *Steele v. R. R. Co.,* 103 S. C., 102, 87 S. E., 639.

Proof of an injury to a servant merely by reason of ■ the failure of machinery or defect in an appliance furnished by the master does not raise the presumption of negligence on the part of the master. *Holmes v. Davis, Director General, et al.,* 126 S. C., 231, 119 S. E., 249.

We will make no further analysis of the testimony, except to say that there was some evidence to go to the jury on the question of negligence of the defendant, and on the question of the contributory negligence of the plaintiff.

Finally, the defendant contends that his Honor erred ■ in refusing to grant the motion for a new trial, made upon the ground that the verdict was grossly excessive, unwarranted, and improper.

The testimony in the case shows that the plaintiff is a young man, 22 years of age; that prior to the accident he was able-bodied, in splendid physical condition, and weighing about 185 pounds. He now weighs about 140 pounds. As the result of the accident, according to Dr. Meade, who was the only medical witness, plaintiff suffered the loss of sight in his left eye, became partially paralyzed in his right arm and hand and right leg, and, due to the blow on his head, causing concussion, suffers constantly since the accident with headache and from nausea and vomiting. The doctor stated unhesitatingly that, in his opinion, the plaintiff is totally and permanently disabled. The verdict is for actual damages only. The Circuit Judge heard the evidence and refused to grant a new trial. Under the evidence in the case,

which we have studied with great care, we cannot see as a matter of law that the Judge failed to exercise properly his discretion in refusing the motion. The injuries to the plaintiff were severe, serious and permanent. *Key v. Carolina & N. W. Rwy. Co.,* 165 S. C., 43, 162 S. E., 582; *Veronee v. Charleston Consolidated Ry. & Lighting Co.,* 152 S. C., 178, 149 S. E., 753.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER and BAKER concur.

MR. JUSTICE BONHAM did not participate.