## MASSACHUSETTS BONDING & INS. CO. v. JONES.

No. 28921.   Oct. 10, 1939.

Rehearing Denied Oct. 24, 1939.

E. M. Connor, of Tulsa, for plaintiff in error.

Roy F. Ford and Leslie W. Lisle, both of Tulsa, for defendant in error.

DANNER, J. The plaintiff in error, an insurance company, appeals from a judgment entered in an action commenced by the defendant in error to recover sick benefits under a policy written April 1, 1937. The cause was tried to the court, resulting in a judgment for the plaintiff.

The principal ground assigned by the defendant for reversal of the judgment is that the court erred in not admitting in evidence the preliminary report of plaintiff's illness prepared by Dr. Pigford, plaintiff's attending physician; the summary sheet on the plaintiff of the Morningside Hospital and the pathological report on the plaintiff of the same hospital. The proffered evidence was excluded upon the ground that such evidence constituted confidential and privileged communications under subdivision 6 of section 272, O. S. 1931, 12 Okla. St. Ann. § 385, and was therefore incompetent. The section provides that the following persons shall be incompetent to testify:

"(a) Physician or surgeon, concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of any such patient: *Provided, that if a person offer himself as a witness, that is to be deemed a consent to the examination;* also, if an attorney, clergyman or priest, physician or surgeon on the *same subject,* within the meaning of the last three subdivisions of this section."

The reports offered in evidence by the defendant were unverified and named "acute appendicitis and bilateral salpingitis" as the cause of plaintiff's disability. The record shows that salpingitis is a disease peculiar to women and is not covered by the terms of the policy. The defendant sought to introduce the reports through its witness, Dr. Pigford, who was the plaintiff's attending physician, and also through hospital attendants. There is no provision in the policy, or in the laws of the state under which the policy was written, which required the insured to report to the defendant the *cause* of the disability upon which claim for sick

benefits was made; nor is there any provision in the insurance contract waiving the physician's immunity from testifying. The only requirement in the policy referring to reports of the attending physician is the following:

"* * * If the insured is disabled by 'such injury' or 'such illness' for more than thirty days, he or his representative must furnish the company every thirty days, if reasonably possible so to do, with a report in writing from his attending physician or surgeon, fully stating the condition of the insured."

The general rule is that a physician is incompetent to testify to facts concerning the health of the insured acquired by him through his employment as physician, since communications as to such facts are privileged. Couch's Cyclopedia of Insurance Law, vol. 8, sec. 2199; Annotation 17 A. L. R. 370. Repala v. John Hancock Mutual Life Ins. Co. (Mich.) 201 N. W. 465; John Hancock Mutual Life Ins. Co. v. Jennings (Ohio App.) 17 Ohio L. A. B. S. 583; Pagni v. N. Y. Life Ins. Co., 173 Wash. 322, 23 P.2d 6, 93 A. L. R. 1325.

In harmony with the foregoing, in the syllabus in American Bankers Ins. Co. v. Hopkins, 67 Okla. 150, 169 P. 489, we held:

"By the express terms of the statute (section 5050, Revised Laws 1910), physicians and surgeons are incompetent to testify without the consent of the patient with respect to two subjects: (a) Any communication made to him by his patient with reference to any physical or supposed physical disease; and (b) any knowledge obtained by a personal examination of any such patient. And this consent is given, according to the terms of the proviso to said section, only in the event the patient offers himself as a witness and voluntarily testifies on the *same subject.*"

The defendant argues that the provision of subdivision 6 of section 272, O. S. 1931, supra, upon which the rule is based, was waived by the plaintiff by her testimony. citing Roeser v. Pease, 37 Okla. 222, 131 P. 534; City of Tulsa v. Wicker, 42 Okla. 539, 141 P. 963; Chicago, R. I. & P. Ry. Co. v. Hughes, 64 Okla. 74, 166 P. 411; Lazell v. Harvey, 174 Okla. 86, 49 P.2d 519, and other cases, which hold that the provisions of the statute are waived where the insured voluntarily testifies as to the extent and nature of her disability and the time and place of treatment. The rule contended for is explained in the body of the opinion in Roeser v. Pease, in the following language:

"Counsel for the plaintiff and defendant do not disagree as to the law. Both sides concede that the doctor's testimony is protected by the plaintiff's privilege, unless she

has waived it by offering herself as a witness on the same subject; and whether or not she had testified on the same subject is the point at issue between counsel. The subject, of course, is the condition of her health some six or seven or eight months prior to the accident, at which time Dr. Grosshart testified as to her condition. Did she testify on this subject at the trial? The substance of her testimony is to the effect that she was in good health just before the accident; that for a year previous to that time she, as a rule, was a healthy woman; that she never had a headache to amount to anything at all. From this testimony it appears that she did testify generally as to the condition of her health prior to the accident, and specifically that she was not accustomed to having headaches before that time. * * *"

The following testimony presented on behalf of the plaintiff constitutes the basis of defendant's claim of waiver:

"E. Hammond Jones * * * testified:

" 'She entered the hospital May 13th. Dr. Pigford was her doctor. They told me they operated on her. She got home June 30. During this period she was sick all the time. She was under the care of a physician from May 13th to Dec. 1st.'

"Lucile Jones * * * testified:

" 'I remember when my sister got ill. It was May 13th. She was real sick. She went to the hospital on May 25th. They operated on her. She has a scar on her abdomen. She did not have a scar before that time. I was there when they brought her out of the operating room. Her physician was Dr. Pigford. From June 30th to about September 1st he was out there every day or two and for awhile twice a day.'

"Mary Elizabeth Jones, the plaintiff, testified as follows:

" 'I got sick May 13, 1937. I went home. I later went to the hospital. They cut me open out there. I left the hospital on June 30th. My doctor was Dr. Pigford. He treated me all of that time. I was not able to work before Dec. 1. No, I could not have worked.' "

Cross-Examination.

" 'I was too weak. Why, I had lost seventy pounds. I was too weak to work. Well, it was in my abdomen. Just kind of below my ribs on the right side. I went to bed when I got home. I was vomiting violently. That continued all night, and for several days. I was in pain. Dr. Pigford gave me medicine all this time. I was in pain all the time. I was under a sedative most of the time. The pain continued until I was operated upon and quite a long time after that. Well, yes, I have a scar. Yes, I do know. No, I could not walk until October 1st, and could not be up until around that time. I felt pain after I was cut on. Well, I was sick enough to

have died for more than three weeks. You see I was quite sick. I kept the nurse until August 10th.' "

We are not convinced that the testimony constitutes a waiver on the part of the plaintiff. In Chicago, R. I. & P. Ry. Co. v. Shelton, 135 Okla. 53, 273 P. 988, we held in the syllabus:

"Where plaintiff offers herself as a witness in an action for personal injuries, but does not voluntarily testify specifically or generally as to the condition of her health prior to the injury, held, that her communications to her physician as to any physical disease during that period of time are privileged."

In the body of the opinion, we said:

"That portion of the testimony of Dr. House which related to information which he had gained in the course of his professional relationship in treating plaintiff before her alleged injury was inadmissible, and did not approach the rule announced in the case of Roeser v. Pease, 37 Okla. 222, 131 P. 534, and other cases on the same subject. It is to be observed that plaintiff offered herself as a witness, but she did not give any voluntary testimony concerning the condition of her health prior to the injury. She neither testified generally nor specifically as to any prior complaint or ailment. Her only testimony in this connection was on cross-examination, wherein she testified that she had had a miscarriage seven or eight years before the injury occurred. Pertaining to the rule under discussion, testimony given on cross-examination is not voluntary testimony. Jones' Commentaries on Evidence (2d Ed.) vol. 5, sec. 2197."

In construing an Arizona statute which provides that a physician cannot testify as to communications or to knowledge obtained from a personal examination "without the consent of the patient," the U. S. Supreme Court, in Arizona & New Mexico Railway Co. v. Clark, 235 U. S. 669, 59 L. Ed. 415, 35 S. Ct. 210, held in the syllabus:

"Neither the testimony of other witnesses, offered by the patient, nor his own voluntary testimony as to his physical condition at the time of his examination by a physician, nor any averments in the pleadings, amount to a waiver of his privilege, under Ariz. Rev. Stat. 1901, § 2535, subd. 6, against the disclosure by the physician of any communications made by the patient with reference to any physical or supposed physical disease, or any knowledge obtained by personal examination of the patient, which, according to the proviso in that section, may be waived only in the event that the patient offers himself as a witness and voluntarily testifies with reference to the 'communications' made by him to the physician."

The foregoing case is quoted, and Chicago,

R. I. & P. Ry. Co. v. Shelton, supra, is cited in the annotation in Harpman v. Devine, Receiver (Ohio) 114 A. L. R. 799, 10 N. E. 2d 776.

In the petition it is alleged that the provision of the policy relating to reports had been waived by the defendant "for the reason that within the time mentioned (30 days) she fully reported her condition and caused her attending physician so to report it to the general duly authorized agent and representative of said defendant in the city of Tulsa, one C. Renfro."

The report alluded to (defendant's Exhibit "A") is the preliminary report of Dr. Pigford, plaintiff's attending physician, on the plaintiff's condition, and was made subsequent to the operation and during the time the plaintiff was being treated by the physician. Among other things, the report gave the cause of plaintiff's disability and was denied admission as evidence on the ground that it was privileged. The defendant asserts that the plaintiff is bound by the allegations in her petition, and, additionally, that the proof shows that the plaintiff, or her sister or uncle, caused Dr. Pigford to make the report and that it was done with plaintiff's consent and approval.

The petition is signed by plaintiff's attorney and is unverified. It does not appear from the record that the plaintiff ever saw the petition, or was familiar with its contents, prior to the trial. We are not impressed with the contention that the allegation in the petition constitutes a waiver of plaintiff's privilege. Arizona & New Mexico R. Co. v. Clark, supra.

Furthermore, it appears plain from the evidence that the plaintiff knew nothing of the report, or when it was made or by whom, and knew nothing of its contents. Likewise, that she did not authorize anyone to make the report. The report was requested by the defendant's agent, Renfro, and was made upon forms furnished by him. Ostensibly, the report was requested and made as proof of illness under the policy. It contained information as to the cause of the disability, not required by the terms of the policy, and is the basis of defendant's claim of nonliability. The report did not constitute a waiver of the privilege statute. Annotation 17 A. L. R. 370; Repala v. John Hancock Mutual Life Ins. Co., supra; Metropolitan Life Ins. Co. v. Plunkett, 129 Okla. 292, 264 P. 827.

The report is an ex parte statement, not under oath, made by the plaintiff's attending physician without her knowledge or consent with no information on her part as to its contents. It was sufficient notice of claim for disability under the policy, and, under the condition of the record, was inadmissible as evidence for any other purpose.

Under the record, we conclude that Dr. Pigford was incompetent to testify; that the preliminary report and the summary sheet on the plaintiff, both prepared by him, were privileged and not entitled to be admitted in evidence. We find it unnecessary to decide whether or not the pathological report of the plaintiff in Morningside Hospital offered in evidence by the defendant and denied admission by the court, was privileged. The report bears the signature of D. O. Smith, and, among other things, shows Dr. Pigford as plaintiff's attending physician. The defendant attempted to introduce the report in evidence through its witness Helen Morey, an employee of the hospital. The witness testified that she had charge of the records of the hospital, but did not make the report or see it made; did not know Dr. Smith's signature, and, personally, knew nothing about the report or its contents, or who prepared it. Clearly, under the proof here submitted, the report was not admissible as evidence.

The judgment is affirmed.

BAYLESS, C. J., and CORN, HURST, and DAVISON, JJ., concur.