SANDERS et ux. v. McMICHAEL et al.

No. 33172.   July 9, 1948.

Rehearing Denied Sept. 14, 1948.

*197 P. 2d 280.*

W. H. Gilliam, of Tulsa, for plaintiffs in error.

Clayton B. Pierce, Gurney C. Cox, Bryan W. Tabor, and Truman B. Rucker, all of Tulsa, for defendants in error.

CORN, J. This action was brought by plaintiffs, parents of Jack Sanders, deceased, to recover $25,000 damages alleged to have been sustained by them as a result of the death of their son from injuries received when a truck he was operating for defendants overturned and partially burned.

The petition alleged plaintiffs were the parents of deceased, who was 17 years of age at the time of his death and their sole support. Deceased was a truck driver for defendants and met his death on July 2, 1944, as a result of injuries received when the truck deceased was driving overturned, caught fire and burned decedent, causing injuries from which he died. Negligence was alleged in that defendants permitted their truck to be in a bad state of repair in that the brakes or wheels locked on the truck and the gasoline tank, which was under the seat, was not fitted with a cap to prevent the fuel from running out when the truck

overturned; and that the battery was not fitted in a firm and stationary manner so that it would not overturn or upset and ignite the gasoline; that defendants had knowledge of the defective condition of the truck but permitted deceased to operate it in this condition, which negligence of defendants directly resulted in death of decedent and consequent loss to plaintiffs.

Defendants answered by general denial with the plea of negligence, unavoidable accident, contributory negligence and assumption of risk. Plaintiffs replied by a general denial and the matter was tried upon the issues formed.

The testimony in behalf of plaintiffs was substantially as follows: The deceased's mother testified concerning the age and physical incapacity of both herself and her husband and that they derived their support from deceased's earnings. She further testified that she was called to the hospital following the accident and was there when her son died. Plaintiffs' attorney attempted to elicit further testimony from this witness as to a dying declaration alleged to have been made by deceased, in response to a question by plaintiff as to how the accident occurred, to the effect that something went wrong with the steering gear of the truck. This testimony was excluded by the trial court under the general rule that dying declarations are not admissible in evidence in civil actions.

Plaintiffs' other witness, one Titus, was on duty as a civilian employee of a United States Army fire department, at an airport near the scene of the tragedy. He did not see the accident happen, but went with other firemen to the scene (of the accident) to extinguish the .fire, arriving after several other persons had reached the overturned truck and after both deceased and his passenger had been removed. The truck was afire when this witness arrived at the scene and he participated in extinguishing flames which enveloped the truck cab, and then cut the battery cables, from which the battery was hanging suspended. His testimony was that he noticed the absence of a gas tank cap, but he did not know whether it had fallen off, or possibly had been removed by someone else. At the close of plaintiffs' evidence the defendants demurred thereto, and after argument on the demurrer the trial court reserved ruling thereon.

Defendants then introduced the testimony of one Russell, defendants' employee at the time of the accident. This witness testified the truck was a water truck (used for hauling water from about a mile and a half away to the construction work), and deceased had been instructed not to make a trip for water when there was water in the tank as it was dangerous to drive the truck when partially loaded. He further testified that he went to the scene of the accident and that the ground was still wet from water having been spilled, but that around 100 or 150 gallons of water remained in the tank, which was 1,000 gallon capacity. On rebuttal this witness admitted he had sent deceased and the other boy on the job.

Another witness, Blanton, was a mechanic who had been employed by defendants at the time of the accident, and was familiar with the truck involved in the accident. He had overhauled and reconditioned the truck about four weeks prior to the accident and between that time and date of the accident had driven the truck and knew it to be in good mechanical condition. He also testified that the impact or heat from the fire could have caused the gas tank cap to come off.

The witness Parker was in defendants' employ at the time and prior to the accident. His duties required him to see that the trucks were in good condition and to keep them serviced, and he had serviced this truck regularly. The witness knew this truck had

been reconditioned a short time before the wreck and he had driven it the day before and it was in good running order. The morning of the accident he and deceased had serviced this truck, and testified positively that when the truck was serviced the gas tank cap was placed upon the tank and was in place when the truck left that morning.

Another witness, Brumble, testified to having seen the accident. In company with three other young people this witness was standing on the highway when the truck passed, the occupants waving at the girls who were with the witness. He estimated the truck's speed at that time as being close to 50 miles per hour. After the truck passed he looked away but the other boy continued to watch the truck and called out when it was turning over and the witness again directed his attention to the truck in time to observe the truck as it turned over, skidded upon its side, rolled partially over on the top, and then fell back to its side.

At the close of the evidence defendants filed a motion for directed verdict which was sustained by the trial court and the jury was directed to return a verdict in behalf of defendants for the reason that there was not sufficient evidence of any primary negligence on the part of defendants to create an issue of fact requiring the jury's consideration. Upon the verdict so returned judgment was entered for defendants.

The assignments of error upon which plaintiffs seek reversal of this judgment are presented under six separate propositions. In view of the record we deem it unnecessary to consider any matters other than those hereafter discussed, since all the errors asserted by plaintiffs are included herein.

It is first urged that the trial court erred in refusing to admit plaintiffs' evidence concerning deceased's alleged dying declaration relative to the cause of the accident. Plaintiffs admit the general rule relative to the inadmissibility of such declarations in civil actions. However, without benefit of supporting authorities, plaintiffs urge that there are exceptions to this rule. The basis of plaintiffs' argument is that if the alleged dying declaration was admitted into evidence, this, taken in connection with other evidence, could provide the basis for prosecution of defendants upon a homicide charge, and that this is sufficient to make such evidence admissible under the rule admitting such evidence in homicide cases.

We think it unnecessary, in deciding this contention adversely to plaintiff, to extend the discussion further than to refer to our decision in Blair et al. v. Rogers, 185 Okla. 63, 89 P. 2d 928. Therein this question is considered at length, both as to the reason for and the application of the rule, and it is pointed out that the rule is " . . . of such antiquity and universality as to almost require no discussion."

We next consider the propositions urged by plaintiffs as follows:

"(2) That the court erred in sustaining defendants' demurrer to plaintiffs' evidence.

"(3) That the court erred in sustaining defendants' motion for an instructed verdict for defendants.

"(4) That the court erred in giving instructed verdict to jury for defendants."

The substance of the evidence received at the trial has been set out heretofore. In brief, it was shown that deceased, the sole support of plaintiffs, was driving a truck for defendants. For some reason this truck, which by competent evidence was shown to be in good condition, was overturned and plaintiffs' son received injuries from which he died. There was absolutely no proof of any of the numerous allegations of negligence, other than testimony from one witness that the gas tank cap was missing when he observed the overturned truck upon his arrival

at the scene a short time after the accident to assist in putting out the fire.

Although negligence may be shown by circumstantial evidence and inferences reasonably deducible therefrom, it is elementary that one who alleges negligence has the burden of proving the allegation by a fair preponderance of the evidence. Winn v. Corey, 179 Okla. 305, 65 P. 2d 522. And, where the circumstances are not sufficient to remove the case from the realm of conjecture and place it within the field of legitimate inferences from established facts a prima facie case for submission to the jury is not made out. McCracken v. Franco Dominion Development Corp. 189 Okla. 354, 117 P. 2d 135.

The question of negligence or no negligence is one of law for the court where but one inference can reasonably be drawn from the evidence; and, where the plaintiff fails to show primary negligence or breach of a duty on the part of defendant, then judgment must be for defendant. City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462; Hanson v. Atchison, T. & S. F. Ry. Co., 184 Okla. 480, 88 P. 2d 348; Stanolind Oil & Gas Co. v. Klaus, 193 Okla. 409, 144 P. 2d 955. Without further multiplying the authorities we are forced to the conclusion that there was no evidence tending to establish primary negligence on the part of the defendants, which was proximate cause of the accident resulting in the death of defendants' employee. When there is an entire failure of the evidence tending to establish this fact (primary negligence), it is error to submit the issue to the jury and the trial court should sustain a demurrer thereto and instruct a verdict for defendant. See Chicago, R. I. & P. Ry. Co. v. Smith, 160 Okla. 287, 16 P. 2d 226; Hanson v. Atchison, T. & S. F. Ry. Co., supra.

Much of the argument made by plaintiffs on appeal is to the effect that since defendants alleged contributory negligence in defense to the action, and because of the provision of section 6, art. 23, Constitution, which makes contributory negligence a question of fact for the jury, it was mandatory upon the trial court to submit the case to the jury. Supporting such argument the plaintiffs cite cases to the effect that where there is any evidence of contributory negligence, the question always is for the jury. That such cases state the settled rule in this jurisdiction is undisputable. However, we know of no authorities and are cited to none by plaintiffs, holding that allegations and proof of contributory negligence alone require submission of a case to the jury when there is a complete absence of any showing of primary negligence.

Plaintiffs further insist that this case must be reversed and the cause remanded for trial under the doctrine of res ipsa loquitur. This argument requires no further discussion, since it is elementary that the doctrine of res ipsa loquitur does not apply as between master and servant. Missouri, O. & G. Ry. Co. v. West, 50 Okla. 521, 151 P. 212; Tunstall v. Mead-Phillips Drlg. Co., 169 Okla. 236, 36 P. 2d 727.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and WELCH, GIBSON, ARNOLD, and LUTTRELL, JJ., concur.