## CITY OF ALTUS v. MARTIN.
### No. 34081.

Supreme Court of Oklahoma.
Jan. 12, 1954.

Rehearing Denied March 23, 1954.

L. A. Pelley, Altus, Duke Duvall, Dudley, Duvall & Dudley, Oklahoma City, of counsel, for plaintiff in error.

Robinson & Oden, Altus, for defendant in error.

WILLIAMS, Justice.

The parties are referred to herein as they appeared in the trial court.

Mildred Martin, administratrix of the estate of R. G. Martin, deceased, sued the City of Altus, to recover damages resulting from the death of R. G. Martin, her husband, alleging failure of defendant to furnish deceased, its employee, a reasonably safe place to work and that on the 20th day of January, 1947, Martin injured his left arm as a result of such negligence, from which injury he died on October 28, 1947. Defendant denied generally such allegations, set up defenses of contributory negligence, assumption of risk and unavoidable accident, and also pleaded that the city in the operation of its sewage booster plant, where the deceased was injured, was exercising a governmental function. Trial was had to a jury; the trial court denied defendant's motion for directed verdict; the jury returned a verdict in favor of plaintiff. Defendant appeals.

The essential facts are practically undisputed. The evidence showed that deceased was in charge of defendant's sewage disposal system, including a booster station used to move sewage to the disposal plant; that such booster station consisted of an underground tank, entered by going through a manhole in the floor of a building over the tank and down a steel ladder; in the bottom of the tank were two electric motors and two electric pumps, the latter being so badly worn that the pumps and cleats in them had to be repacked frequently; that because of this worn and defective condition of the pumps sewage flowed out on the floor, and that when the deceased went down into said tank to repack or otherwise repair the pumps he customarily wore rubber boots.

The only witness to deceased's fall, other than himself, was Willard A. Martin, his nephew, who testified that the steps of the ladder were worn and slick; that the tank was painted a dark color inside and was lighted only by a drop light, which did not give sufficient light; that one descending into the tank had to reach about 2½ feet forward and downward from the manhole to contact the highest rung of the ladder; at about 9:30 or 10:00 o'clock in the morning, the witness was in the tool house immediately over the tank and deceased was working in the tank below; that deceased had climbed up the ladder and was standing with part of his body out of the manhole, having come up for some more material with which to pack the pumps; that witness turned his back to get some packing to hand to deceased and as he did so heard a sound, looked around and saw the deceased disappear down the manhole; that he went down and assisted deceased out of the tank and found that deceased had hurt his elbow. He further testified that the pumps and motors in the booster station had to be cleaned at least twice a week and that prior to the accident he had heard the deceased complain to the mayor about the condition of the pumps and request their repair. His testimony as to the condition

of the pumps was substantiated by that of Robert G. Martin, a son of the deceased, who had on occasion gone with his father to the booster station and who testified that the pumps were old and worn out and that oil and slime would accumulate in the tank.

It appears that the injured left elbow of deceased developed bursitis, and on two occasions the fluid in the elbow had to be removed, and also that a small piece of bone was removed from the elbow; that the condition of deceased grew worse; that he was released from his duties but continued on full pay; that he was sent by his superintendent to a certain hospital in Oklahoma City, where an operation was performed on the elbow. Prior to this operation the deceased was in good health, except for the condition of his arm, but died some two hours after the operation, the hospital records reciting the cause of his health as "embolus or coronary occlusion"; this means a blocking of the coronary artery by a blood clot or some other obstruction.

On appeal defendant argues five propositions of error, and they will be considered in the order in which presented in the brief.

The first proposition is that no actionable negligence is shown for the reason that the only acts which might support an action for negligence were within the realm of the City's governmental function; that there was no right of recovery because the deceased was in full charge; that the evidence showed a mere creation of a condition by which the accident was made possible; and that the simple tool doctrine precludes recovery.

As to the first subdivision above (with reference to the governmental function) defendant cites 38 Am.Jur. sec. 633, page 334, to the effect that the establishment of sewers and drains is a governmental function and that the adoption of plans or designs for such sewers is also a governmental function for which the municipality is not liable in case of negligence in connection therewith. This contention is necessarily grounded upon the assumption that the negligence, if any, in the instant case, was the result of faulty design. Such is not necessarily true. While it is true that

evidence was received herein as to the design of the tank where the accident occurred, there was also evidence that the premises were maintained in a slippery and slimy condition. See City of Mangum v. Garrett, 200 Okl. 274, 192 P.2d 998, wherein this court said:

"The maintenance and repair of its sewers is a corporate or proprietary function of a city, and the city is liable for injuries sustained because of its failure to properly maintain and repair its sewers."

See also Spaur v. City of Pawhuska, 172 Okl. 285, 43 P.2d 408; Oklahoma City v. Stewart, 76 Okl. 211, 184 P. 779; and City of Sayre v. Rice, 132 Okl. 95, 269 P. 361.

As to the second argument under this proposition (that deceased was in full charge and the City is therefore not liable) defendant cites Atchison, T. & S. F. R. Co. v. Kennard, 199 Okl. 1, 181 P.2d 234, 235, to the following effect:

"The rule imposing upon the master the non-delegable duty to furnish a reasonably safe place to work, reasonably competent fellow servants, and reasonably safe tools and appliances with which to work, has no application to a skilled and experienced vice principal entrusted by the employer with complete control and supervision of the work and the method of doing it, and upon whom rests the responsibility of advising the employer if additional tools, appliances or helpers are necessary for the safe performance of the work, *in the absence of advice by the vice principal that such are needed and a request that they be furnished.*" (Emphasis supplied.)

Even assuming that deceased herein was a vice principal, it is evident from the emphasized portions above that the quoted rule has no application here, for the reason that there was uncontradicted evidence that the "vice principal", if deceased was such, did make complaint to the mayor as to the defective condition of the premises, and that the mayor indicated that repairs would be made. The contention is therefore without merit.

In support of its third argument under this proposition (that defendant merely created a condition under which the accident became possible) defendant cites Munroe v. Schoenfeld & Hunter Drilling Company, 178 Okl. 149, 61 P.2d 1045 to the general effect that where defendant's negligence created a condition by which the accident was made possible, and subsequent independent action caused the injury, the existence of the condition created by defendant is not the proximate cause of the injury. In that case it was shown that a certain wooden runway, extending out from an oil derrick, ended in such a position that it was about five feet above the ground; that as he was leaving work to go home, the plaintiff voluntarily walked along the runway to the end and then jumped to the ground, preparatory to getting into his parked car. He was immediately seized with pains and died fifteen days later from a ruptured abscess on the brain. The court pointed out that "There were other ways of leaving the runway. The choice of a place to park his car was his. The choice of routes to the car was his. The act of jumping was his." The court then said that even if defendant had been negligent in not building steps at the end of the runway, such negligence was still not the proximate cause of the injury.

■ In the instant case, the injury occurred at the place where the deceased was required to be; there was only one way into or out of the tank, and he had no choice at all of "routes" to follow. All the other cases cited by defendant in support of this argument can likewise be distinguished upon the facts, in that each of them the proximate cause of the injury, if any, was a cause independent of defendant's alleged negligence, and the argument is without merit.

, Defendant's last argument under this proposition is that the "simple tool" doctrine precludes recovery in the case at hand. In support thereof, defendant cites various cases in which a ladder has been held to be a "simple tool" within the meaning of the following rule:

"The ordinary homemade ladder belongs to that class of tools and appliances the character and use of which are understood by all ordinary men alike, and which need not be inspected by the master before committing them to the hands of his servant who has equal capacity with him to understand their character and uses." Nelson v. Wolverine Petroleum Corporation, 189 Okl. 351, 117 P.2d 787.

■ However, the ladder in the case at hand was not an "ordinary homemade ladder"; it was a metal ladder fixed permanently to the side of the underground tank where the accident occurred. We therefore believe it was a part of the premises and not a tool. See 145 A.L.R., sec. 5, page 553, wherein the following is found:

"Where an employer has placed a ladder at a certain point to be used by his employees for the sole purpose of going from one level to another at that point, it is generally held that the ladder is not within the simple tool rule. O'Brien v. Northwestern Consol. Mill. Co. (1912) 119 Minn. 4, 137 N.W. 399; Mizak v. Carborundum Co. (1916) 172 App.Div. 627, 159 N.Y.S. 274; Langston v. Fiske-Carter Constr. Co. (1936) 180 S.C. 113, 185 S.E. 62; Colonna Shipyard v. Bland (1928) 150 Va. 349, 143 S.E. 729, 59 A.L.R. 497."

See also Puza v. C. Hennecke Co., 158 Wis. 482, 149 N.W. 223, wherein the court held that a stepladder constitutes a place rather than a tool and is not within the "simple tool" rule.

Defendant's second proposition is to the general effect that if there was any evidence of actionable negligence, the proof was insufficient to take the issue to the jury, in that it wholly failed to show that the injury to deceased was caused by such negligence. Defendant insists that the evidence which was submitted to the jury permitted the jury to speculate as to the cause of the fall of deceased, in that deceased might have reached too far and pulled his foot off the ladder, or turned his ankle, or failed to place his foot securely on the rung on the ladder, or might have become dizzy and lost his balance, and that the jury was required to speculate upon which of these

things, or other possible causes, produced the fall of deceased and his consequent injury. We are unable to agree with this contention.

In the case of Sheridan, Adm'x v. Deep Rock Oil Corp., 201 Okl. 312, 205 P.2d 276, and in Sanders v. McMichael, 200 Okl. 501, 197 P.2d 280, both cited and relied upon by defendant, there was a failure to prove any negligence on the part of the defendant which could have caused or contributed to the injury. In the instant case the record shows without contradiction the greasy and oily condition of the floor of the booster station at the time the deceased was injured; that deceased had been down in the tank, wearing rubber boots, and climbed back up the ladder for more packing at the time he was injured. The jury could use their common knowledge that such condition of the booster station floor would cover the soles of the rubber boots with grease, oil, slime and sewage, tending to make them slip on any substance more easily, and making more slippery and treacherous the steel rungs of the small ladder upon which deceased was standing, which rungs were said by the witness to have been worn and slick. The testimony of plaintiff's witnesses in this respect is borne out by the testimony of the water superintendent of defendant, who testified that he had been down the ladder at times when the pumps overflowed sewage, and that at such times the ladder would be wet with sewage from the overflow, and messed up, and that "you had to be more careful then naturally than you would be at other times." He further testified that the pumps would not overflow when they were in good condition, but that the packing would burn out and the sewage would escape at the pump shaft. He further testified that Martin reported to him that he slipped on the ladder and hurt his elbow, and that Martin had previously complained about the insufficiency of the pumps to handle the sewage.

█ This evidence was insufficient to permit reasonable men to draw the conclusion that the injury to deceased was attributable to the condition of the floor of the booster station, and the fact that the rungs of the ladder had become slick from long wear and use and from the grease and slime carried up the ladder on the soles of the rubber boots of deceased. In Mid-Continent Pipe Line Co. v. Price, 203 Okl. 626, 225 P.2d 176, and Casualty Reciprocal Exchange v. Sutfin, 196 Okl. 567, 166 P.2d 434, we said [203 Okl. 626, 225 P.2d 182]:

" 'Negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom, and the proximate cause of the injury may also be determined from circumstantial evidence, Griffin Grocery v. Scroggins, 145 Okl. 9, 293 P. 235; Marland Refining Co. v. Snider, Adm'r, 125 Okl. 260, 257 P. 797. Where there is competent evidence on the question of negligence introduced from which reasonable men might draw different conclusions it is one for the jury, and under like circumstances the question of proximate cause is one for the jury, Palacine Oil Co. v. Philpot, 144 Okl. 123, 289 P. 281, 291; Highway Const. Co. v. Shue, 173 Okl. 456, 49 P.2d 203.' "

█ In the instant case the jury may well have believed that defendant was guilty of negligence due to its maintenance of the booster station tank in a poorly lighted fashion, or painted a dark color, or the ladder in a worn condition or the floor of the booster station in a slimy and greasy condition due to defective pumps and cleats, or a combination of any two or more of them. The jury, in order to find for plaintiff, was not required to decide the precise cause of the injury, but only to say from the evidence that it was more probable that the injury was due to one or more of the foregoing alleged acts of negligence than to some other cause. We think the evidence was sufficient to justify the jury in finding for plaintiff. In a civil cause, as stated in Mid-Continent Pipe Line Co. v. Price, supra., all the plaintiff is required to do in order to establish his claim is to make it appear more probable that the injury came from the defendant's negligence than from any other cause, which fact could be established by circumstantial evidence.

Defendant's third proposition is to the general effect that the only proof offered to establish that the accident was the cause

of deceased's death was the testimony of a local doctor, which testimony was based solely on hospital charts and records, and that such charts and records were inadmissible.

Under this proposition defendant argues first the question of admissibility of the hospital charts and records, and cites the following cases from this jurisdiction: National Life and Accident Insurance Co. v. Roberson, 169 Okl. 136, 36 P.2d 479; Massachusetts Bonding and Insurance Co. v. Jones, 185 Okl. 551, 94 P.2d 885; Metropolitan Life Insurance Co. v. Bradbury, 179 Okl. 253, 65 P.2d 433. A careful examination of these cases shows that none of them is authority for defendant's proposition that hospital charts and records are not admissible in evidence. In the first case cited above, the court held that certain X-ray plates were not admissible because they had not been shown to be accurate representations of what they portrayed, in spite of the contention that, as records of the Oklahoma City Health Department, they were public records required to be kept by law. In the second case cited, the court refused to admit in evidence certain medical and hospital records concerning plaintiff; these were offered *by defendant insurance company,* and this court sustained the trial court's refusal to admit them on the ground that their admission would have been a violation of 12 O.S.1951 § 385, subd. 6, concerning privileged communications between physician and patient. In the case at hand, no question of privilege is involved, since the hospital records were offered by plaintiff. It is well settled that the physician-patient privilege may be waived by one having a right to claim it (see 58 Am.Jur. Witnesses, sec. 440), and the cited case is therefore not applicable here. In the third case cited above, the court refused to admit in evidence two instruments which did not purport to be hospital records; one was a "clinic card" and the other was a written statement by a doctor, executed over three years after the pertinent date involved in that case.

The question of whether or not hospital charts and records are admissible in evidence has been decided by this court in Hembree v. Von Keller, 189 Okl. 439, 119 P.2d 74, 76, wherein it was said in syllabus 4:

"In order for book accounts of a hospital and the charts of patients therein to be admissible in evidence, they must be shown to have been correctly kept, to have been kept in the ordinary course of business as an essential part of the system of business, to have been made at or reasonably near the time of the transaction, to be books of original entries, and shown to be relevant and material to the issue."

Defendant says that the above syllabus was not necessary to the decision of the court in that case and that it was mere dictum. Be that as it may, it was adopted by this court, has not been overruled, and is a part of the law of this state. See 12 O.S. 1951 § 977; see also Corbin v. Wilkinson, 175 Okl. 247, 52 P.2d 45, and McDonald v. Stiles, 7 Okl. 327, 54 P. 487.

It is not contended that the requirements of the above rule were not complied with in the instant case; on the other hand, the record shows full compliance. We therefore hold that the hospital records and charts were properly admissible.

The holding above renders unnecessary any consideration here of the contention of plaintiff, which appears to have merit, that the hospital records were admissible as an admission against interest for the reason that defendant sent plaintiff's deceased to the hospital in question, and the hospital was therefore the agent of defendant.

Under this proposition defendant next argues that "the cause of death must be established by expert medical testimony except in cases where a layman could appreciate the cause of death as well as a doctor, as, for example, where a person has been run over and killed by a train". Defendant cites authority in support of this general rule of law. However, such argument is without merit for the reason that in the case at hand there was competent expert medical testimony from a physician to the effect that the accident caused the injury and death.

The last argument under this proposition rests upon the assumption that the testimony of the physician referred to in the paragraph next above was insufficient to establish cause of death, for the reason that he testified from the hospital records which were not admissible. Since we have already shown that they were admissible, the argument is without merit.

■ The fourth proposition is that the court erred in the admission of evidence of changes and improvements in the booster station by the city subsequent to the accident in question. While it is true that one witness testified, at one point, over defendant's objection, to such improvements, the record shows that he, at other points, and other witnesses, for both plaintiff and defendant, testified to the same effect without objection. We have repeatedly held that a party may not complain under such circumstances. See Wood v. Kerr Dry Goods Co., 190 Okl. 197, 121 P.2d 992, wherein the court said:

"A party may not complain of the admission of evidence over his objection, where other evidence of the same tenor was admitted without objection."

The last proposition is that the court erred in not granting defendant's motion for continuance which was presented when the case was called for trial. The motion recited that an Oklahoma City physician, whose testimony was needed by defendant would be unable to appear because he had to perform two operations on the day of trial. Attached to the motion was the affidavit of the physician to the effect that he had treated defendant and performed the operation (deceased died about two hours after the operation), and that in the opinion of the physician, deceased had died of heart disease.

■ It is elementary that a motion for continuance is addressed to the sound discretion of the trial court and that the ruling of the court will not be disturbed in the absence of a showing of abuse of discretion. See Schuman's, Inc. v. Missy Drews Co., 172 Okl. 211, 44 P.2d 862. See also Chortney v. Curry, 99 Okl. 69, 225 P. 950, to the following effect:

"A party to an action is not entitled to a continuance on account of the absence of a witness, where the witness does not reside in the county, and the party seeking the application has known for some time his location, and what his testimony would be, and where no effort has been made to secure the testimony by deposition."

■ In the case at hand there was no showing of the use of diligence to secure the attendance of the witness; and there was no showing that an effort had been made to take his deposition. The trial court did not commit error in refusing to grant the continuance.

The judgment of the trial court is affirmed.

JOHNSON, V. C. J., and CORN, DAVISON, ARNOLD and O'NEAL, JJ., concur.

HALLEY, C. J., and BLACKBIRD, J., dissent.

HALLEY, Chief Justice (dissenting).

There was no causal connection established between the defendant's alleged negligence and plaintiff's deceased injury as it was not shown what caused deceased to slip and fall. What caused the deceased to fall is pure conjecture.

It was error to admit evidence of repairs after the accident and constituted reversible error when considered with all the other errors in this case.

The City of Altus of necessity works through its employees. Here is the case of a man who had been employed for eleven years doing a particular job. There is nothing in the record to show that he at any time complained to the City Fathers that the ladder was defective. If it became greasy it was his duty to clean it off. It is a well settled rule in the law of Master and Servant that the master is not required to give either warning or instruction as to apparent dangers from falling where the servant is working in a perilous position, or where the fall was caused by a condition actually known to the servant or plainly obvious to him. If there was any defect

in this ladder it was an obvious defect and the deceased knew more about the alleged defects than anyone else in the world. 56 C.J.S., Master and Servant, §§ 295 and 296, Notes 35 and 36.

If the danger here was as obviously dangerous as the plaintiff claimed, there was no need to warn the employee of its existence or as to its effect. Breece-White Mfg. Co. v. Baker, 8 Cir., 106 F.2d 815.

In Phillips v. Tackett, 168 Okl. 143, 32 P. 2d 29, 31, this Court said in an opinion by Justice Welch that there was no legal obligation on the part of the employer to warn the employee where the danger to the employee was patent and obvious and quoted from 18 R.C.L. 569 as follows:

"'There is no duty of warning and instruction if the employee's duties are simple and the danger obvious or if by any other means he possesses knowledge of the risk to which he is subjected.'"

This rule was followed in Janow v. Lewis, 197 Okl. 415, 172 P.2d 315, where we said a master is not bound to warn his servant against dangers which are patent and obvious.

I do not think that a municipality should be liable in a case of this kind where the servant was in a position to know of the defective ladder if defective and did know more about its condition than anyone else and never complained that it was dangerous or defective.

In my opinion the trial court abused its discretion in not granting the defendant a continuance because of the unavailability of one of the doctors who treated the deceased since medical testimony was of vital importance in this case. The deceased's death came such a great length of time after the injury to deceased's arm and it was difficult to determine whether death was caused from the injury or something else.

While I think that a demurrer to the plaintiff's evidence should have been sustained, the worst that should happen to the defendant is to have a new trial granted. To affirm the trial court would be overlooking too many errors.

I am forced to dissent.